I RASKINS, Judge.
The defendant, Horseshoe Casino, appeals a finding by a workers’ compensation judge that the plaintiff, Stella D. Colvin, is entitled to temporary total disability benefits and to supplemental earnings benefits. For the following reasons, we reverse.
FACTS
The plaintiff began working at Horseshoe as a beverage server on or about September 30, 1994. She earned $2.58 per hour, and tips. From July to August 1995, she took a leave of absence from her job, due to emotional problems not related to her employment. Although she did not report it on that date, the plaintiff claimed that on November 13,1995, she suffered a work-related accident and resulting injury while carrying a tray of drinks. The plaintiff who is 5’2” and weighs less than 100 lbs., testified that on the afternoon in question, she lifted a tray of drinks to carry out to the casino floor. When she attempted to lower the tray, she claimed she heard a popping sound in her right shoulder. She also experienced pain and a tearing sensation. She was able to lower the tray using her left side and was able to finish her shift, using her left arm. She complained of tingling and numbness in her wrists and hands which existed prior to this occurrence. The plaintiff did not report this incident to her supervisor. The next day, the plaintiff worked as a “breaker” relieving other waitresses when they took their breaks. She claimed she worked only 2y¿ hours on that day. She stated that she tried to work on November 15, 1995, but the pain in her wrists became so severe that emergency medical technicians on the boat wrapped her wrists and she went home.
The plaintiff obtained an appointment with Dr. Stephen Andl, a physician on the preferred provider list for the casino. During the initial visit to the doctor [2on November 15, 1995, the plaintiff contended that she reported shoulder pain and burning in her fingers. However, the doctor’s notes indicate only a complaint regarding the wrists. At that point Dr. Andl opined that the plaintiff suffered from carpal tunnel syndrome (CTS) and determined that she required further medical testing. He gave the plaintiff a note indicating that she had CTS and that she should be on light duty work until further evaluation was completed.
On November 15, 1995, the plaintiff went from the doctor’s office to her supervisor, with a note from the doctor specifying that she should work only light duty. The plain *1005 tiff was offered a job washing silverware for $4.50 per hour. The plaintiff declined the job. November 15,1995 was the last day the plaintiff worked at the casino.
In December 1995, the plaintiff resigned her position as a beverage server, returned her uniforms and security badges to the casino and left the state. She returned to Louisiana in July 1996 and applied for a dealer’s position at the casino. Her application was rejected because she had not previously given two weeks notice before formally ending her employment as a beverage server. On September 17,1996, the plaintiff filed a claim for workers’ compensation benefits with the Office of Workers’ Compensation.
A hearing on the plaintiffs claim was held on November 20, 1997. The plaintiff testified at trial that prior to her employment with the casino, she worked as a cosmetologist, a retail store manager, a representative for a jewelry company and a clerical worker. When Horseshoe refused to rehire her upon her return to this state in September 1996, the plaintiff applied to the State Vocational Rehabilitation Department. She claimed that she was assessed as disabled and obtained financial aid to pursue a degree in public relations at Bossier Parish _JjCommunity College (BPCC). However, no such assessment appears in the record. At the time of the hearing, the plaintiff had three years of study remaining to earn her degree. According to the plaintiff, as a result of her injury, she frequently wears splints on her wrists while sleeping and her condition slows her down in computer classes at BPCC.
The plaintiff admitted that she had a broken bone in her wrist in 1993, prior to her employment at Horseshoe and that she had experienced pain in her wrists before the date of her alleged accident. The plaintiff also admitted that she did not report her alleged accident on November 13, 1995, at the time it occurred. The parties stipulated to the testimony of Horseshoe’s human resources manager, Frank Lamore, that the plaintiff threatened to sue the casino only after her reapplication for work in September 1996 was rejected. The defendants also presented the testimony of Kirby Potts, an acquaintance of the plaintiff. Mr. Potts testified that he helped her move between December 1996 and February 1997 and that the plaintiff was able to move boxes and was not wearing splints on her arms.
The deposition of Dr. Andl shows that he first saw the plaintiff on November 15, 1995. At that time, she complained of bilateral wrist pain which was worse in the right wrist. Nothing in the physician’s notes indicates that the plaintiff made any complaint of shoulder pain during this visit. Dr. Andl referred the plaintiff to Dr. Eric Bicknell for an EMG, which is a nerve conduction test used in diagnosing CTS. According to Dr. And! and Dr. Bicknell, the EMG results were normal.
Dr. Andl next saw the plaintiff on December 1, 1995. Her wrists were improved but Dr. Andl noted her “shoulder pain continues.” The notes also provide that the plaintiff is “now having pain in shoulder.” Dr. Andl noted that thepplaintiffs shoulder pain was aggravated by activities such as driving a car. He discussed stretching and exercises with her and stated that he thought the shoulder problem could be “early impingement.” In a letter dated December 18,1996, addressed to the plaintiffs counsel, Dr. Andl responded to the fact that his notes from the plaintiffs initial visit did not include a complaint of shoulder pain. According to the doctor, he could not in all honesty state when the plaintiffs shoulder pain started. He noted that the initial treatment for shoulder pain from impingement syndrome is similar to that for CTS and that both CTS and impingement are “overuse” injuries.
Dr. Andl noted that during the December 1995 office visit, the plaintiff indicated her intent to leave the state. The plaintiff did not consult Dr. Andl again until September 17, 1996, the day she filed her workers’ compensation claim in this case. On that date, the plaintiff complained of difficulty sleeping because of pain in her wrists and shoulder. Regarding the wrists, Dr. Andl continued the plaintiffs medication and the use of splints at night. According to the doctor’s notes, the range of motion in the plaintiffs shoulder was normal and she exhibited only mild discomfort. Dr. Andl was unsure about “im *1006 pingement syndrome” and doubted she had biceps tendinitis. He referred her to an orthopedic surgeon, Dr. Thomas Edwards, for further evaluation. The record does not reflect that the plaintiff ever saw Dr. Edwards. On October 1, 1996, Dr. Andl’s office manager gave the plaintiff a letter indicating that she could not return to work. The letter does not include a reason why she was not able to work.
On October 24, 1997, Dr. Lewis C. Jones, an orthopedic surgeon, examined the plaintiff at Horseshoe’s request. He noted that the plaintiff complained of right upper extremity pain with soreness which extends to the wrist and that she had | ¿¡some intermittent numbness and tingling in the wrist area. However, Dr. Jones found no objective cause for the plaintiffs complaint. His report shows that the plaintiff had no tenderness or swelling of the shoulder or atrophy of the shoulder musculature. The plaintiff had full passive motion in the shoulder, including internal and external rotational movement. She had a negative supraspinatus stress test and no pain with internal rotation and abduction with flexion. She had full motion in the shoulder, elbow, forearm and fingers. She had some bony crepitus sensation when bringing the arm down from an overhead position. The plaintiffs x-rays were normal, and Dr. Jones found no evidence of arthritis, ruptured disc, pinched nerve, or tendinitis in the right arm. There was also no evidence of rotator cuff tendinitis nor any evidence of a rotator cuff tear or arthritis in the joint. Dr. Jones also found no evidence of CTS, but recommended new EMG and nerve conduction tests to rule out the possibility. He stated that if those tests were negative, the plaintiff could return to normal work activities without restriction. If she maintained that she could not work, a Functional Capacity Evaluation (FCE) should be conducted to determine if the plaintiff was putting forth an honest effort and to see at what level the plaintiff could perform.
On January 8, 1998, the workers’ compensation judge (WCJ) filed a judgment in favor of the plaintiff, awarding her temporary total disability (TTD) benefits at the rate of $166.66 per week, from November 15, 1995, the last day she worked at the casino, until December 1, 1995, when she resigned her position as a waitress. The WCJ also awarded the plaintiff supplemental earnings benefits (SEBs) from October 1, 1996, until such time as it is shown that the plaintiff can work. The WCJ encouraged the parties to obtain a new EMG and an FCE to | (¡determine whether the plaintiff is currently able to work. The defendant appealed the WCJ’s ruling.
ACCIDENT OR INJURY
The defendant contends that the WCJ erred in finding that the plaintiff suffered an injury arising out of and in the course and scope of employment, because there was no causal connection between any injury and her employment. Horseshoe also claims that the WCJ committed reversible error in finding that the plaintiff suffered any disability entitling her to workers’ compensation benefits. These arguments, have merit.
Legal Principles
La. R.S. 1031(A) provides:
If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
A work-related accident is “an unexpected or unforseen actual, identifiable, precipitous event happening suddenly and violently, with or without human fault, and directly produe-ing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1); Woods v. Ryan Chevrolet, Inc., 30,206 (La.App.2d Cir.2/25/98), 709 So.2d 251, writ denied 98-1169 (La.6/5/98), 720 So.2d 689.
The terms “injury” and “personal injuries” are defined in La. R.S. 23:1021(7) to include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.
*1007 |7The claimant in a workers’ compensation case has the burden of proving a work-related accident and resulting injury by a preponderance of the evidence. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992); Holiday v. Borden Chemical, 508 So.2d 1381 (La.1987); Balsamo v. Jones, 28,885 (La.App.2d Cir.12/11/96), 685 So.2d 1140; Woods v. Ryan Chevrolet, Inc., supra. Proof by a preponderance of the evidence means that the evidence, taken as a whole, makes the fact sought to be proved more probable than not. Balsamo v. Jones, supra; Jackson v. Creger Automotive Company, Inc., 29,249 (La.App.2d Cir.4/2/97), 691 So.2d 824, writ denied 97-1436 (La.9/26/97), 701 So.2d 984; Chitman v. Davison Trucking, 28,073 (La.App.2d Cir.2/28/96), 669 So.2d 671.
The claimant’s testimony may suffice to meet the burden, provided there is no other evidence sufficient to discredit or cast doubt upon the claimant’s version of the incident, and his testimony is corroborated by circumstances following the accident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Bruno v. Harbert International, Inc., supra. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses or friends; corroboration may also be provided by medical evidence. Bruno v. Harbert International, Inc., supra.
The claimant does not necessarily have to establish the exact cause of the disability, but he must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Woods v. Ryan Chevrolet, Inc., supra. A claimant’s disability is presumed to have resulted from an accident if before the accident he was in good health, but commencing with the accident, the symptoms of the disabling conditions appear and continuously thereafter manifest themselves, providing either that there is sufficient medical evidence to show there Isis a reasonable possibility of a causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with other facts of the case, raises a natural inference through human experience that such a causal connection exists. Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2d Cir.1991).
The key requirement is that a precipitous event directly produces sudden objective findings of an injury rather than a mere manifestation of a gradual deterioration or progressive degeneration. Qualls v. Stone Container Corporation, 29,794 (La.App.2d Cir.9/24/97), 699 So.2d 1137, writ denied 97-2929 (La.2/6/98), 709 So.2d 736.
The WCJ’s findings are subject to the same standard of review, manifest error, as a trial court’s. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Hill v. Manpower-Collier Investments, 30,444 (La.App.2d Cir.4/08/98), 712 So.2d 560. Under this standard, the reviewing court does not ask whether the factfinder is right or wrong, but whether its conclusion was reasonable. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993). Where documents or objective evidence so contradict the witness’ story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness’ story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based on credibility. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Discussion
The WCJ found that the plaintiff experienced an accident at work when she lifted her drink tray. The WCJ noted that the plaintiff testified as to a particular | ¡¿ray, a particular lifting, hearing a pop and feeling pain. The WCJ, in oral reasons for judgment, unequivocally rejected the plaintiffs claims of occupational disease regarding the wrists, finding that the plaintiff failed to establish that she suffered from CTS in either wrist. This conclusion by the WCJ is supported by the medical evidence introduced at the hearing. The plaintiff did not appeal or answer the appeal as to the finding that she did not suffer from CTS. Therefore, this portion of the decision is not properly before this court for review. La. C.C.P. art. 2133.
The reasons for decision indicate that the WCJ had some misgivings regarding *1008 whether the plaintiff had sufficiently shown a cause for her alleged disability. The WCJ stated, “I don’t think that it’s evidence of a full blown carpal tunnel syndrome yet, and I don’t think that’s what’s disabling at this point in time. I can’t exactly say what is.” The WCJ found that the plaintiff suffered some sort of nonspecific “upper right extremity injury” and that she had severe pain, numbness and weakness. The WCJ noted that the plaintiff sought medical treatment and on October 1, 1996, Dr. Andl found that the plaintiff could not work. The WCJ stated that the plaintiffs inability to work was confirmed by the “rehab services” and that Dr. Jones, Horseshoe’s examining physician, found the plaintiff had right upper extremity pain. Upon these findings the WCJ granted the plaintiff TTD benefits and SEBs. However, we find that, upon careful examination of the testimony and evidence presented in this case, the plaintiff has failed to prove that she suffered a disabling injury.
We first note that, on the date the alleged accident and injury occurred, the plaintiff finished her shift and failed to report her accident to her supervisor. The plaintiffs employment record shows that she was familiar with Horseshoe’s | ^procedure for reporting accidents at work, having filed such a report several months earlier, after being burned by spilled coffee.
After finishing her shift on the date of the alleged injury, the plaintiff worked a relief shift on November 14. Then, on November 15,1995, the plaintiff claimed that during her shift, the pain in her wrists became so severe that emergency personnel on the boat wrapped them and the plaintiff went home.
The plaintiff was initially seen by Dr. Andl on November 15, 1995. Dr. Andl’s notes show that the plaintiff stated that she was a waitress, carried heavy trays and had experienced wrist pain since May. The notes also state that “severe pain started Monday.” There is no indication in the doctor’s notes that the plaintiff described the sudden precipitous event involving the drink tray she claims occurred on November 13, 1995. Also, the doctor’s notes reflect that the only complaint voiced by the plaintiff at that time concerned her wrist pain. There is no report of shoulder pain at that time. Further, Dr. Andl did not specify that the plaintiffs complaints were caused by a work-related accident and injury or that she was unable to work. Dr. Andl simply stated that the plaintiff should be on light duty pending evaluation to determine whether she had CTS. Examination and evaluation by Dr. Bicknell were negative for CTS.
On the plaintiffs next visit to Dr. Andl on December 1, 1995, there is a complaint of shoulder pain included in the record. However, this complaint appears to be secondary to the complaint of wrist pain, which the plaintiff claimed was improved. The doctor’s notes on this date indicate that the shoulder pain was aggravated by driving a car, an activity not required by or associated with her employment. Further, at this point, there is still no finding by Dr. Andl that the plaintiff suffered a work-related injury or was unable to work.
| a When the plaintiff returned to Louisiana, she promptly applied for a dealer’s position at the, casino. Apparently, at that point, she did not feel she was disabled and unable to perform that function. Further, the plaintiff provided no information as to whether, during her absence, she had continued to be in pain, whether she sought treatment, or whether she was disabled and unable to work.
Upon the rejection of the plaintiff’s application to work as a dealer, the plaintiff again saw Dr. Andl on September 17, 1996, the same day she filed to receiver workers’ compensation benefits. On that date, the plaintiff complained of wrist and shoulder pain. As stated above, regarding the shoulder pain, Dr. Andl noted that the plaintiffs range of motion was within normal limits and that she exhibited only mild discomfort. Also, as stated above, the plaintiff failed to see Dr. Edwards as suggested by Dr. Andl. Further, there is no notation in Dr. Audi's records that the plaintiff was disabled and unable to work. We also note that in Dr. Andl’s deposition given prior to the hearing in this case, he did not indicate that the plaintiff was disabled and unable to work. The record contains only a letter dated October 1, 1996, stating that the plaintiff was under Dr. *1009 Audi’s care and as of that date, could not return to work. This letter is signed, not by Dr. Andl, but by his office manager. There is no indication in this letter or anywhere in the record on appeal as to why the plaintiff could not work at that point. We also note that the visit to Dr. Andl on September 17, 1996 is the only date in the record indicating the plaintiff sought treatment for her “upper right extremity” after returning to this state.
Further, there is no confirmation of any disability by the Rehabilitation Services of the Louisiana Department of Social Services. At the hearing, the plaintiff claims she applied for vocational rehabilitation and was examined and | ^evaluated by a Dr. Holladay who determined that she was severely disabled. This factor was relied upon by the workers’ compensation judge in granting judgment in favor of the plaintiff. However, the record before this court on appeal contains no such evaluation and finding of disability.
Further, after reviewing Dr. Jones’ evaluation of the plaintiff, we do not find that his report deemed her to be injured or disabled. The findings by Dr. Jones, outlined above, made no findings of any injury or abnormality in the plaintiffs wrists or shoulder. All x-rays and evaluations by Dr. Jones indicate that her shoulder and wrists were normal. He suggested a new EMG to rule out the possibility of CTS .since, at that point, several years had passed since Dr. Bieknell’s evaluation. However, Dr. Jones did not find that the plaintiff had a work-related injury or that she was unable to work.
Based upon the record before us, we find that there is no evidence that the plaintiff sustained a disabling injury while employed at Horseshoe Casino which prevents her from working. The record shows that the plaintiff experienced some pain upon lowering a drink tray and upon medical evaluation, her physician thought she had CTS, a diagnosis which was not confirmed by medical testing and which was rejected by the WCJ. The record also shows that the plaintiff did not initially complain to her doctor of shoulder pain and, when she did, that complaint was secondary to her complaints of wrist pain. No physician ever determined that either the wrist or the shoulder pain was the result of an accident at work or that the plaintiff was disabled as result. Because we find that the plaintiff failed to establish a compensable accident and injury, she is not entitled to either TTD benefits or SEBs. The decision of the WCJ finding that the plaintiff sustained a | ^disabling injury to her right upper extremity and awarding her benefits is clearly wrong and manifestly erroneous and accordingly, is reversed.
CONCLUSION
For the reasons stated above, we reverse the ruling of the workers’ compensation judge in favor of the plaintiff, Stella D. Col-vin. We enter judgment in favor of the defendant, Horseshoe Casino, dismissing Ms. Colvin’s claims for workers’ compensation benefits. All costs in this court are assessed to the plaintiff.
REVERSED AND RENDERED.