756 So.2d 659 (2000)
D'Antoni TIPPETT, Plaintiff-Appellee,
v.
MID-STATE WOOD PRESERVERS, et al., Defendants-Appellants.
No. 32,943-WCA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 2000.
*660 Pettiette, Armand, Dunkelman, Woodley & Byrd by Robert A. Dunkelman, Shreveport, Counsel for Appellants.
Gregory G. Elias, Monroe, Counsel for Appellee.
Before BROWN, STEWART, KOSTELKA, JJ.
KOSTELKA, J.
In this workers' compensation action, the employer appeals a judgment ordering it to provide medical treatment for claimant. Finding that claimant failed to prove that a work-related accident directly produced objective findings of an injury, we reverse.

Facts and Procedural History
D'Antoni Tippett ("Tippett") began working for Mid-State Wood Preservers ("Mid-State") in November 1997 as a general yard hand. In early February 1998,[1] Tippett was involved in an accident while in the course and scope of his employment. He had been engaged in pulling wood off the chain and loading it into a lumber buggy. A forklift bumped into the buggy causing Tippett to be pinned momentarily between the buggy and a nearby railing. Tippett testified that he immediately experienced pain in his lower back and could not move for thirty minutes. He, thereafter, reported the incident to the person he believed to be supervising that day, Walter Williams ("Williams"), and asked that Williams report the incident on his behalf. Williams testified that he did not witness the accident, but that, when Tippett approached him, he informed Tippett that the accident should be reported to the supervisor, Chris Graham, and that Tippett would have to take a drug test. Williams denied agreeing to make a report for Tippett. Tippett never reported the accident to any other supervisor. Due to consistently poor work performance and unexcused attendance problems, Tippett was fired on the day following the alleged accident.
Bill Jones ("Jones"), a co-owner of Mid-States, did not learn of the incident until March 1998 when Tippett appeared in his office asking for money to see a doctor. After making general inquiries, Jones chose not to advance Tippett funds for a doctor. Jones later conducted a full investigation after Tippett filed his workers' compensation claim. At that time, the forklift driver denied hitting Tippett. And, two other coworkers explained that they had seen the accident but that Tippett was not injured, did not make complaints of pain, and continued working immediately thereafter. Moreover, these coworkers believed that the accident occurred *661 well before early February 1998. Later, at trial, one of these individuals denied the incident ever happened. Williams likewise testified at trial that he believed the accident took place a month prior to Tippett's dismissal.
Despite his trial testimony that he began experiencing pain immediately after the accident, Tippett neglected to seek any medical attention until March 26, 1998. On that date, he visited the Lincoln General Hospital emergency room and complained of a rash on his inner thigh and scrotum. He was treated for that condition only. The records make no mention of complaints of back pain; nor is there any reference to a work accident. Then, on April 16, 1998, Tippett visited the emergency room at E.A. Conway Hospital. At that time, he related a work injury occurring approximately six weeks previously (early March 1998). He complained of pain in his lower back and right leg. However, the medical records show that Tippett departed the facility before any treatment could be offered or rendered.
Tippett made a third visit to the emergency room on May 15, 1998. Again, Tippet complained to the physicians at E.A. Conway of lower back pain resulting from a work accident. On this date, he estimated that the incident had occurred one month earlier. Medical records from that visit note that an examination of the back was unremarkable and that there was no muscle spasm nor any leg parathesis. A diagnostic x-ray revealed that the lumbar vertebral bodies were normally aligned with normal intervertebral disc spaces. No acute bony or soft tissue abnormalities were seen.
On June 27, 1998, Tippett visited the emergency room at Lincoln General Hospital complaining of chronic back and right hip pain. He reported that the pain began with a work accident on January 27, 1998. When the physicians were unable to find any objective signs of injury, Tippett told them that the pain was all on the inside. He was prescribed pain medication and was released. Tippett visited this same emergency room almost one month later making the same complaints. Again, he was given medication and discharged with instructions to follow up with physical therapy. On August 10, 1998, Tippett appeared at Lincoln General seeking medical care for acute tonsillitis. No complaints of back pain were made at that time.
On August 15, 1998, Tippett presented to E.A. Conway with complaints of back pain dating back to February 1998. He denied any radicular pain. On examination, his back was non-tender and a straight leg raise test was negative. Tippett next complained of back pain on November 9, 1998 at Lincoln General's emergency room. He related the then-current pain to his history, as well as recently lifting heavy tables at his new place of employment. He made the same complaints at Lincoln General on November 20, 1998. Upon examination, no objective signs of injury were noted. Tippett's request for a shot for pain relief was refused. The medical records indicate that he left the emergency room without receiving discharge instructions or signing out.
On December 11, 1998, Tippett was an unrestrained passenger in an automobile accident. Tippett was seen at Glenwood Regional Medical Center. For the first time in the approximately nine months Tippett spent seeking medical consultations, a physician finally detected objective signs of injury. Muscle spasms were palpable in the lumbar spine. X-rays taken that day revealed "mild disc space narrowing at L5-S1." Nevertheless, the emergency room doctor's report categorized this result as "negative."
Tippett filed a workers' compensation claim against Mid-States in June 1998. The matter came to trial on March 17, 1999. After hearing the evidence, the workers' compensation judge ("WCJ") determined that Tippett had proven a workrelated accident but that the record contained "not one shred of evidence that he *662 suffered any disability or inability to work." Indeed, the record is replete with details of the various jobs Tippett held after his discharge from Mid-States.[2] Accordingly, the WCJ denied Tippett's claim for disability benefits, but believing that he had proven a work-related accident and injury, the WCJ ordered "that the claimant shall have his choice of a physician and that the defendant shall pay reasonable and necessary medical treatment associated therewith." Mid-States appeals, arguing that Tippett has proven neither a work-related injury nor the medical necessity for treatment. Tippett did not appeal the rejection of his claim for disability benefits.

Discussion
A work-related accident is "an unexpected or unforseen actual, identifiable, precipitous event happening suddenly and violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1); Woods v. Ryan Chevrolet, Inc., 30,206 (La. App.2d Cir.02/25/98), 709 So.2d 251, writ denied, 98-1169 (La.06/05/98), 720 So.2d 689.
The claimant in a workers' compensation case has the burden of proving a work-related accident and resulting injury by a preponderance of the evidence. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992); Colvin v. Horseshoe Casino, 31,586 (La.App.2d Cir.02/24/99), 728 So.2d 1003; Woods, supra. The claimant's testimony may suffice to meet the burden, provided there is no other evidence sufficient to discredit or cast doubt upon the claimant's version of the incident, and his testimony is corroborated by circumstances following the accident. Bruno, supra. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouse, or friends; corroboration may also be provided by medical evidence. Id. While the claimant does not necessarily have to establish the exact cause of the disability or injury, he must demonstrate that the accident had a causal connection with the alleged disability. Colvin, supra; Woods, supra.
Nevertheless, the key requirement is that a precipitous event directly produces objective findings of an injury rather than a mere manifestation of a gradual deterioration or progressive degeneration. Colvin, supra.
In the instant matter, the WCJ believed Tippett's story that there had been an accident at Mid-States involving a forklift. Indeed, along with his own description of the accident, Tippett presented testimony from Williams indicating that Tippett attempted to report an accident to him. And, Jones related that his investigation revealed corroboration for some sort of accident involving the lumber buggy. We cannot say the WCJ was clearly wrong in this regard. Yet, the evidence simply does not support a conclusion that this accident ever produced any objective findings of an injury.
Although Tippett claims to have been incapacitated by the accident for thirty minutes, the supposed witnesses to the event (whom Tippett did not call to testify) related to Jones that Tippett was not injured and returned immediately to work. Indeed, Tippett did not seek medical attention for his back pain until April 16, 1998, some two and one-half months after the Mid-States incident. Tippett contends that he could not consult a physician prior to that time because of transportation problems and his inability to pay. Yet, during the time between the accident and April 16, 1998, Tippett was able to arrange transportation to his recently-obtained employment. Moreover, Tippett found the *663 means to seek medical treatment for a rash in March 1998.
Even should we accept as true Tippett's continued complaints of back pain, there is still no evidence of objective findings of injury during his multiple visits to the emergency room. On each occasion, neither physical examinations nor diagnostic testing revealed any evidence of an injury. Tippett simply failed to produce any objective evidence of an injury until after his December 1998 automobile accident.
While recognizing that the WCJ's findings are subject to the manifest error standard of review, see Alexander v. Pellerin Marble & Granite, 93-1698 (La.01/14/94), 630 So.2d 706, we do not find a reasonable basis for the WCJ's conclusion that Tippett demonstrated a work-related injury. Indeed, in rejecting Tippett's claim for disability benefits, the WCJ acknowledged that there was "not one shred of evidence that he suffered any disability or inability to work." Inasmuch as Tippett has failed to carry his burden of proof in that regard, he is not entitled to recover medical expenses.

Conclusion
Accordingly, for the foregoing reasons, the judgment below is reversed at claimant's cost.
REVERSED.
BROWN, J., concurs with written reasons.
BROWN, J., Concurring.
Tippett had to show by a preponderance of the evidence that the medical problems for which he sought treatment were causally connected to the work-related accident. This he failed to do.
NOTES
[1] At first, Tippett estimated the date of the accident to be January 27, 1998. Later, he determined that the accident must have occurred on February 3, 1998.
[2] The record also demonstrates that Tippett was discharged from those positions for the same reasons as his termination from Mid-States. Tippett performed poorly and had a tendency to wander away from his work station.