771 So.2d 820 (2000)
Toni L. THOMAS, Plaintiff-Appellant-Appellee,
v.
IRVING PLACE REHABILITATION CARE CENTER, Defendant-Appellant-Appellee.
No. 34,064-WCA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2000.
*821 Toni L. Thomas, Appellant/Appellee in proper person.
Robert A. Dunkelman, Shreveport, Counsel for Appellant/Appellee Irving Place Rehabilitation Care Center and Travelers Property Casualty.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
*822 WILLIAMS, J.
The claimant, Toni L. Thomas, filed this workers' compensation action against Irving Place Rehabilitation Care Center ("Irving Place") and its insurer, Travelers Property Casualty ("Travelers"), contending that she sustained a back injury while in the course and scope of her employment with Irving Place. The worker's compensation judge ("WCJ") found that claimant had sustained a work-related injury, but denied Thomas' claim for medical "treatment as recommended by Drs. Tarvin and Blair." The WCJ further ordered that defendants pay for claimant's psychological testing, and that each party bear its own costs. Both parties have appealed. For the following reasons, we affirm the judgment.

FACTS AND PROCEDURAL HISTORY
On June 28, 1998, Toni Thomas, a certified nursing assistant at Irving Place, injured her back while lifting and transferring a 300-pound patient from a wheelchair to place her in a bed. The defendant initially paid Thomas indemnity benefits of $126.37 per week. On January 12, 1999, Irving Place terminated the claimant's benefit payments.
At the time of her injury, Thomas was lifting and transferring the patient when Thomas heard a pop and felt a pinch in her back. Thomas immediately went to the nurse on staff at Irving Place and told her what had happened. Because the nurse was unable to find the administrator or head nurse, the nurse wrote an accident report of the incident. The next day, after talking to Thomas about the injury, the head nurse apparently sent Thomas to Dr. James Dossey, an occupational medicine specialist.
Dr. Dossey's initial diagnosis was a lumbar strain of the lower back, and noted that his examination revealed tenderness in the claimant's spinal region. The claimant testified that Dr. Dossey merely came into the room and looked at her, wrote her a prescription and sent her home. No physical therapy was ordered for the claimant. Dr. Dossey's notes show, and the claimant testified, that Dr. Dossey recommended physical therapy for Thomas. The claimant was released to return to light-duty work only, with restrictions on lifting and moving patients. When Thomas returned to work on the following work day, she was told that there was no light-duty work and she was sent home. Claimant was instructed not to return to work until she was 100% better.
On July 3, 1998, Dr. Dossey again examined the claimant. During this visit, the claimant complained of numbness in both legs. Dr. Dossey diagnosed lumbar strain and left SI joint strain, although he had no explanation for the numbness. He again released the claimant with restrictions on lifting and moving patients. The claimant testified that she continuously complained to Dr. Dossey of pain and a tingling numbness that he never addressed. Still, the claimant was not given any physical therapy.
During the claimant's third visit, Dr. Dossey conducted a clinical examination of Thomas and ordered radiographic studies (x-rays) of Thomas' lumbosacral spine. During this visit, claimant also complained of pain and numbness in her left leg. Dr. Dossey's reiterated his diagnosis that claimant had lumber strain and some intermittent left leg symptoms. The x-rays revealed disc space narrowing at L5-S1, facet sclerosis at the L5-S1 level, and a possible spondylolysis bilaterally at L5. The findings of the clinical examination were normal. Dr. Dossey again released the claimant with the same restrictions on lifting or carrying patients.
During claimant's fourth visit, Dr. Dossey noted complaints of bilateral numbness of both legs. However, he maintained his previous diagnosis of lumbar strain. There were no objective findings of spasm or any neurological findings. During this visit, Dr. Dossey became concerned with the non-organic (non-physical and non-physiological) *823 complaints of pain. Dr. Dossey wrote a note on claimant's behalf restricting her lifting to objects under 10 pounds, with no bending and stooping.
On Thomas' fifth and final visit, on August 21, 1998, Dr. Dossey opined that the claimant still had lumbar strain, but that it was slowly improving. Dr. Dossey noted that the claimant "could probably increase to medium [duty] work," but she should still avoid lifting more than 50 pounds and carrying objects that weighed more than 25 pounds. Dr. Dossey opined that claimant still needed to undergo physical therapy. Further, he found that the claimant's physical condition would need to improve before she could safely return to her regular work activities, which included transferring and assisting the nursing home residents.
On September 17, 1998, the claimant was examined by Dr. Kerry Tarvin and a Dr. Blair, chiropractors at First Choice Medical Clinic. Thomas complained of severe sharp pain in her lower back and leg, with weakness and numbness of a level seven on a scale of one to ten for hip pain, and ranging from four to seven for leg pain. Dr. Tarvin diagnosed Thomas as having sub-acute lumbalgia caused by lumbar sprain and strain, with associated radicular pain and hypesthesia to the left leg, complicated by lumbar disc lesion. Dr. Tarvin concluded that claimant's injuries were a result of the June 28, 1998 work-related accident. Thereafter, Dr. Tarvin ordered an MRI of the lumbar area, which results were unremarkable and within normal limits.
On October 1, 1998, Dr. Tarvin wrote a letter to Travelers informing the insurance company that the claimant needed neurological testing to determine the site of the impingement or injury. Dr. Tarvin referred the claimant to Dr. Karl Bilderback for an examination and treatment.
The claimant contacted Donna Mares at the insurance company and requested approval to see Dr. Bilderback. According to the claimant, the insurer initially approved her consultation with Dr. Bilderback; however, the insurer later stated that claimant was not authorized to see Dr. Bilderback. Instead, the claimant was sent to Dr. Lewis Jones, an orthopedic specialist. According to claimant, the insurance company also informed her that she was not authorized to see Dr. Tarvin again. The claimant did not see Dr. Bilderback.
On November 18, 1998, Dr. Lewis Jones saw the claimant at the request of the insurer. The claimant testified that Dr. Jones did not examine her, but merely asked her some questions and referred her to Dr. David Adams. However, Dr. Jones testified that he examined the claimant, and his medical records support his testimony.
Dr. Adams began an EMG/NCV test on the claimant. Although he could not examine her lumbar paraspinal muscles due to her weight, he found no electrodiagnostic evidence of problems in either of her lower extremities. Thereafter, Dr. Adams sent claimant to Paul Procell, an occupational therapist. Procell performed a functional capacity evaluation and opined that the claimant was presenting gross symptom magnification.
By January 5, 1999, Dr. Jones was unable to find any objective reasons for claimant's complaints of pain and released the claimant to return to work. However, Dr. Jones recommended that Thomas receive psychological testing. Dr. Jones testified, "[S]he may need to be treated emotionally to deal with this...problem she's having."
As stated above, on January 12, 1999, the insurer terminated claimant's disability benefits. Claimant filed a "Disputed Claim for Compensation" form and hired an attorney. On March 12, 1999, claimant's attorney withdrew from her case. After a September 17, 1999 request for an extension of time, claimant appeared in proper person at the trial on January 10, 2000.
*824 The defendants' pre-trial statement noted three issues for trial: (1) injury; (2) disability; and (3) necessity of additional medical treatment. Claimant apparently did not file a pre-trial statement. At the beginning of the trial, the WCJ asked, "[B]efore we proceed, are there any preliminary matters?" Thomas replied, "Basically is for them to authorize doctors for my treatment." The WCJ then stated, "Ok. I note specifically the issues involve your request for medical treatment recommended by Dr. Blair and Dr. Tarvin. Is that what you're stating?" Thomas replied, "Yes, ma'am." Furthermore, in the initial stage of the trial, the judge announced that two issues would be addressed at the trial. The judge stated, "Ok. So the Court will take up the issue of whether Ms. Thomas is entitled to medical treatment recommended by Dr. Blair and Tarvin, and also whether an injury occurred while on the job in the course and scope of her employment with Irving Place Rehabilitation Care Center." Therefore, at the initial stage of the trial, the issues to be resolved were not only causation, but also the necessity of additional medical examination/treatment, particularly claimant's referral by Dr. Tarvin, the chiropractor, to Dr. Bilderback.
During the trial, claimant testified that she injured her back while lifting a patient at Irving Place on June 28, 1998. The claimant also testified that since the accident she has been in debilitating pain due to back spasms and has been unable to drive because of the possibility of a car wreck if a spasm were to occur. The claimant and her witness, Stephanie Bowers, both testified that she has lost all autonomy over her day-to-day life and had to depend on her children and others to do such things as maintain her home and get her to and from doctor appointments. Further, claimant testified that she must use a wheelchair to grocery shop and that because of these major changes in lifestyle and the inability to be independent, she has become depressed.
Bowers testified that she has known the claimant for over eight years and has never known Thomas to have any kind of medical problems or injuries before her work-related injury of June 28, 1998. Bowers also testified that she has witnessed the claimant's back spasms, suffering, and change in lifestyle. Bowers further testified that she has observed claimant in pain, and was aware that claimant's children have cleaned and maintained the claimant's home. According to Bowers, she has been assisting claimant at home and has been driving claimant to doctor visits after the accident because of the leg and back spasms.
The claimant testified that she takes medication daily for pain, spasms, and numbness in her legs. She takes depression medication because she has become severely depressed as a result of the accident and her loss of independence. She states that she cannot lift anything, and has had to take medical treatment matters into her own hands, at her cost. According to claimant, her family doctor gives her medication for the pain, spasms, and numbness in her legs.
The defendants did not call any witnesses. However, they introduced the depositions and related medical records of Dr. Jones, Dr. Dossey, and Mr. Procell into evidence. Over an objection, claimant was also allowed to introduce medical records from Dr. Tarvin and other medical providers.
At the conclusion of the hearing, the WCJ found that claimant had met her burden of proving that she sustained an injury on June 28, 1998, while she was in the course and scope of her employment at Irving Place. However, the WCJ also found that claimant had not met her burden of proving that she was unable to return to work as a result of the work-related injury at Irving Place. Therefore, the WCJ found that the claimant was not entitled to indemnity benefits. In addressing claimant's request for medical treatment, the WCJ stated, "As to the *825 employee's request for additional medical treatment, the court finds the evidence overwhelmingly shows that employee's subjective complaints were not consistent with objective studies conducted ..." Although the WCJ denied additional medical treatment, she granted claimant's request for psychological testing with a psychiatrist of her choice and ordered each party to bear its own costs.
The claimant and the defendants have appealed the WCJ's decision.

DISCUSSION
The claimant contends the WCJ erred in refusing to grant claimant the right to see a doctor of her choice. The record does not support claimant's contention. Under the provisions of LSA-R.S. 23:1121, an injured employee shall submit to an examination by a duly qualified medical practitioner provided and paid for by the employer as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary. The employee has the right to select one treating physician in any field or speciality, and the employee has the right to a summary proceeding when the employer denies her the right to select a physician.
The record reflects that claimant did not raise this issue prior to trial, and, therefore, did not invoke her right to a summary proceeding on the issue. Furthermore, although claimant stated at the beginning of the trial that she wanted the defendants to "authorize doctors for my treatment," the WCJ responded by specifically noting that the issues of the case involved claimant's request for medical treatment as recommended by Drs. Blair and Tarvin. The WCJ then asked claimant had the court given a correct interpretation of the issue that claimant was presenting. Claimant responded in the affirmative. Accordingly, after reviewing the record, we conclude that claimant raised the issue of whether she was entitled to the "medical treatment" recommended by Drs. Blair and Tarvin. The recommended "medical treatment" referred to was Dr. Tarvin's recommendation that claimant see Dr. Bilderback. In other words, the issue placed before the WCJ was whether claimant was entitled to any further medical treatment/examination, rather than whether claimant was denied the right to select a treating physician.
The record reflects that the claimant chose to be treated by Drs. Tarvin and Blair. Dr. Tarvin was a chiropractor, and, according to the claimant, Dr. Blair was "an orthopedic doctor," whose diploma claimant "had seen on his wall." Claimant also sought treatment from a Dr. Patterson who apparently was a resident or intern at LSU Medical Center. Claimant appears to have selected Dr. Patterson, and claimant testified that she knew he was "in the study of orthopedic." Thus, the record reveals that claimant had been seen by at least three medical providers of her choice, in addition to Drs. Dossey, Jones, and the occupational therapist, Paul Procell. Although it is clear that Thomas never saw Dr. Bilderback, the record does not support her contention that she was denied the right to select one treating physician in any field or specialty. After reviewing this record, we find that claimant's first assignment of error is without merit.
In another assignment of error, claimant contends that although the defendants offered her $5,000 to settle the case, she had already paid for all of the doctor visits and medication. Claimant further contends that she hired an attorney who advised her to take the money and "not worry about the rest." The attorney then resigned from the case because "there was no money in it for her." According to claimant, she accepted the offer, but did not receive any money from the defendants. We note that there is absolutely no evidence of an offer to settle claimant's case in the record. Only issues raised at trial are properly before this court on appeal. *826 Lalena v. Municipal Fire and Police, 27,244 (La.App.2d Cir.9/27/95), 661 So.2d 520. Therefore, this assignment of error is rejected.
Thomas also contends that the WCJ erred in assessing costs to each party. Her argument in support of this assignment of error mainly revisits her arguments concerning her right to be treated by a physician of her choice. Nevertheless, we observe that under the provisions of LSA-C.C.P art.1920, a court may render a judgment for costs, or any part thereof, against any party, as it may consider equitable. In the instant case, the claimant was partially successful in obtaining relief because the judgment ordered defendants to pay for psychological testing. On the other hand, the employer and insurer were partially successful in their defense of the claimant's suit for benefits and medical care. Under these circumstances, we find no abuse of discretion in the WCJ's decision to order each party to pay its own costs.
The defendants have raised two assignments of error on appeal. We note that the defendants also assign as error, the WCJ's order that each party pay its costs. For the same reasons that we rejected claimant's argument in this regard, we also reject the defendants' argument.
The defendants also contend that the WCJ erred in admitting Exhibit P-1 into evidence. This exhibit consists of claimant's medical records. However, in light of the fact that we have affirmed the judge's rejection of all of Thomas' claims that could be supported by this exhibit, we conclude that this issue is moot. We further note that the evidence upon which the court based its award of psychological testing came from the defendants' evidence, rather than the plaintiffs evidence.
By the defendants' next assignment of error, they contend the judge erred in failing to grant their motion for an involuntary dismissal at the close of claimant's case. Defendants argue that at the close of claimant's case, she had failed to provide the court with sufficient evidence to substantiate her claim for benefits. Defendants state that no medical depositions had been introduced into evidence at that time. However, we observe that the testimony of a workers' compensation claimant may suffice to establish a work-related accident and resulting injury, provided that there is no other evidence sufficient to discredit or cast doubt upon the claimant's version of the incident and the claimant's testimony is corroborated by circumstances following the incident. Tippett v. Mid-State Wood Preserves, 32,943 (La.App.2d Cir.4/5/00), 756 So.2d 659. In the instant case the WCJ had heard not only the claimant's testimony, but also Bower's corroborating testimony. It is well settled that a WCJ's ruling on a motion for involuntary dismissal should not be disturbed absent manifest error. Brown v. Paducah Rigging Inc., 99-1074 (La.App. 5th Cir. 2/29/00), 757 So.2d 79. Detecting no abuse of discretion in the WCJ's decision to reject the motion for involuntary dismissal, we find this assignment of error to be without merit.
Finally, the defendants assign as error the order requiring the defendants to pay for "medical treatment for a mental injury." Although defendants make a detailed argument concerning the compensability of a mental injury caused by a physical injury, and point out that the plaintiff never claimed to be entitled to benefits as a result of any type of mental injury, the flaw in defendants' argument is that the judgment does not award benefits for a mental injury. Instead, the judgment merely orders psychological testing based on the following testimony from Dr. Jones' deposition:
The only thing I would do is get some psychological testing or counseling, and she may need to be treated emotionally to deal with this, the problem she is having. She may be experiencing pain from an emotional standpoint, but I did *827 not find any evidence to support her pain from an organic standpoint.
We also observe that claimant testified she had become depressed from "the state of this illness," and that she had to take anti-depressant medication because she was "used to being independent and doing for [herself]."
In essence, the WCJ was neither ordering the defendants to pay for psychological treatment for claimant nor concluding that claimant was suffering from a mental injury caused by her physical injury. The judgment simply reflects the judge's concern that claimant may need psychological counseling. We find that the order for testing to rule out that possibility was not an abuse of discretion under the circumstances.

CONCLUSION
For the reasons set forth above, the judgment is affirmed. Costs of this appeal shall be assessed equally to the claimant and the defendants.
AFFIRMED.