818 So.2d 64 (2001)
Patrick LaDAY
v.
CATALYST TECHNOLOGY and Liberty Mutual Insurance Company.
No. 2000 CA 1973.
Court of Appeal of Louisiana, First Circuit.
November 9, 2001.
*65 Pamela L. Ashman, Eulis Simien, Jr., Baton Rouge, LA, for plaintiff/appellant, Patrick LaDay.
John T. Roethele, Denham Springs, LA, for defendant/appellee, Catalyst Technology.
BEFORE: GONZALES, KUHN, and CIACCIO,[1] JJ.
GONZALES, J.
In this appeal, Patrick LaDay, a workers' compensation claimant, challenges the denial of his claim against Catalyst Technology (Catalyst), his former employer.[2] *66 The workers' compensation judge granted Catalyst's motion for directed verdict based on his conclusion that Mr. LaDay failed to prove by clear and convincing evidence that he suffered an employment-related mental injury as defined by La. R.S. 23:1021(7).

FACTUAL AND PROCEDURAL BACKGROUND
Mr. LaDay was employed by Catalyst as a reactor technician. In early March of 1998, a crew of Catalyst employees, including Mr. LaDay, traveled from Baton Rouge to a jobsite in Montgomery, Alabama. Mr. LaDay alleges, on a day during the first week of the job, he was inappropriately touched on the buttocks by Willie Craft, the supervisor of the job, as Mr. LaDay was bending over a reactor. Mr. LaDay was upset about the incident and reported it to Roosevelt Wright and Travis Collins, the two co-workers with whom he was working that day. Mr. LaDay alleges that, later the same day, Mr. Craft was angry with him for telling Messrs. Wright and Collins about the touching incident and spit tobacco juice on Mr. LaDay's hard hat. When Mr. LaDay confronted Mr. Craft about the spitting, Mr. Craft spit on him again and allegedly said, "That's what I think of you."
According to Mr. LaDay, he was very distressed about Mr. Craft's behavior. He called his mother, Mrs. Edwina Brown, after the touching/spitting incidents occurred. At the workers' compensation hearing, Mrs. Brown testified Mr. LaDay was very angry and upset about the incidents but that he continued to work at the Alabama jobsite until the three-week job was completed. Mr. LaDay claims Mr. Craft ostracized him after the incidents and was able to get other Catalyst employees to turn against him and think badly of him. Mr. LaDay also claims he reported Mr. Craft's behavior to Clyde Williams, Mr. Craft's supervisor, who told Mr. La-Day not to mention the incidents to anyone else and that he was going to take care of it.
After his return to Baton Rouge from Alabama, Mr. LaDay refused to accept any job assignment where Mr. Craft was the supervisor. He worked on two later jobs under a different supervisor, but resigned from his employment at Catalyst in June of 1998, because he felt he was unable to trust those with whom he worked.
After leaving his employment at Catalyst, Mr. LaDay worked at Hi Nabor Supermarket where he was the manager of the frozen food and dairy department. His employment at Hi Nabor was terminated after approximately five or six months. Although he was told he was being fired for failure to conform to the store's dress code, Mr. LaDay's explanation was that he was terminated "[b]ecause [he] refused to let people step on [him] any longer and just walk over [him]."
At the workers' compensation hearing, Mrs. Brown testified that, prior to the touching/spitting incidents, her son was an upbeat person who enjoyed his work and who had lots of friends. Although Mr. LaDay had a family history of depression and had previously been hospitalized for depression in 1989 when his brother committed suicide, Mr. LaDay had not been under treatment in the recent past.
After the incidents, Mrs. Brown testified that Mr. LaDay continued to be very upset and was "haunted" by the incidents. He withdrew from people, feeling as though he was unable to trust, was depressed, began having nightmares, drinking heavily, and losing weight. Eventually, Mr. LaDay began having thoughts of suicide.
In December of 1998, Mr. LaDay sought treatment from Dr. Robert Davis, a clinical *67 psychologist, and from Dr. Kenneth Todd, a psychiatrist. Dr. Todd placed Mr. LaDay on antidepressant and sleep-aid medications. Dr. Davis began a course of psychotherapy with Mr. LaDay. He diagnosed Mr. LaDay with a "Major Depressive Disorder Severe without Psychotic Features" and a "Generalized Anxiety Disorder." Dr. Davis determined Mr. LaDay was disabled and unable to work from December of 1998 through March of 1999, at which time his condition improved; however, in June of 1999, Mr. LaDay's emotional condition deteriorated and he was hospitalized for three days at BHC Meadow Wood Hospital, a psychiatric facility, for severe depression with suicidal ideations. After his release from the hospital, Mr. LaDay continued psychotherapy with Dr. Davis. By November of 1999, Dr. Davis was of the opinion Mr. LaDay was capable of, and would benefit from, returning to some type of employment. According to Dr. Davis, Mr. LaDay's depression and eventual suicidal condition were caused by Mr. Craft's conduct, the subsequent negative response from his co-workers, and the lack of support from Catalyst management. Dr. Davis explained these occurrences made Mr. LaDay "feel overwhelmingly disrespected and hurt and angry and then unable to receive any justice for that injustice, he began to feel quite helpless and hopeless and became depressed to the point where his life was in danger."
In February of 1999, Mr. LaDay filed a disputed claim for compensation, seeking compensation benefits and payment of medical expenses. He later amended his claim, seeking penalties and attorney fees for Catalyst's alleged arbitrary and capricious failure to approve medical treatment and to pay benefits. In his pre-trial statement, Mr. LaDay claimed the touching/spitting incidents "constituted sudden, unexpected, and extraordinary stress related to [his] employment, resulting in mental injury to [him]." In an amended pre-trial statement, Mr. LaDay alternatively alleged he suffered a physical injury which resulted in mental injury.
The matter was tried by the workers' compensation judge on March 2, 2000. At the end of the presentation of Mr. LaDay's case, Catalyst moved for an involuntary dismissal,[3] arguing Mr. LaDay had failed to prove his entitlement to benefits under the Louisiana Workers' Compensation Law. The workers' compensation judge took the matter under advisement and, on March 8, 2000, signed a judgment denying Mr. LaDay's claim. In the judgment, the workers' compensation judge stated: "[Mr.] LaDay has failed to prove by clear and convincing evidence that the mental injury alleged was the result of a sudden, unexpected, and extraordinary stress related to the employment."
Mr. LaDay appeals from the adverse judgment, essentially contending the workers' compensation judge erred in concluding he failed to carry his burden of proving a compensable mental injury.[4]

MENTAL INJURIES UNDER THE LOUISIANA WORKERS' COMPENSATION LAW
Recovery of workers' compensation benefits is allowed for mental injuries or illnesses *68 resulting from work-related mental stress or caused by work-related physical injury. La.R.S. 23:1021(7). A mental injury must be proved by clear and convincing evidence and is compensable only if diagnosed by a licensed psychiatrist or psychologist, and only if the diagnosis meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association. La.R.S. 23:1021(7)(b), (c), (d). Further, if the mental injury results from work-related mental stress, it is compensable only if the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment. La.R.S. 23:1021(7)(b).

Mental Injury Caused by Mental Stress
Whether a mental injury is the result of "a sudden, unexpected, and extraordinary" stress is determined from the point of view of whether an ordinary reasonable person of usual sensibilities would find the stress extraordinary, not whether the particular claimant found the stress to be extraordinary. Aucoin v. Dow Chemical Company, 98-1912 (La.App. 1 Cir. 9/24/99), 745 So.2d 682, 683, writ denied, 99-3596 (La.2/18/00), 754 So.2d 968. Although a supervisor's conduct toward an employee may be appalling, insensitive, and reprehensible, and although an employee may be subjected to a "rude and crude method of management," such conduct does not always give rise to a compensable mental injury. See Favorite v. Louisiana Health Care Authority, 98-721 (La.App. 5 Cir. 12/16/98), 725 So.2d 556, 558. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. White v. Monsanto, 585 So.2d 1205, 1209 (La.1991).[5]
In denying Mr. LaDay's claim, the workers' compensation judge determined Mr. LaDay failed to prove by clear and convincing evidence that the stress caused by the touching/spitting incidents was "extraordinary." In reasons for judgment, the workers' compensation judge explained that the incidents described by Mr. LaDay constituted juvenile behavior and were certainly inappropriate for the work place, but that the incidents were not so shocking to rise to the level of extraordinary stress for a reasonable person. A workers' compensation judge's factual determination as to whether a claimant has discharged his burden of proof should not be disturbed on review absent manifest error. Ross v. Remediation Services of Louisiana, 97-2102 (La.App. 1 Cir. 5/15/98), 714 So.2d 218, 221. Further, the dismissal of a workers' compensation claim based on a motion for involuntary dismissal should also not be reversed absent manifest error. Trench v. Harmony Construction Company, 95-1851 (La.App. 1 Cir. 4/4/96), 672 So.2d 330, 333, writ denied, 96-1130 (La.6/7/96), 674 So.2d 973; see also Thomas v. Irving Place Rehabilitation Care Center, 34,064 (La.App. 2 Cir, 11/1/00), 771 So.2d 820, 826. The manifest error standard of review requires reversal only when there is no reasonable basis for the trier of fact's findings and when those findings are clearly wrong. Hoy v. Gilbert, 98-1565 (La.3/2/99), 754 So.2d 207, 209.
*69 After a thorough review of the record, we conclude there is a reasonable basis in the record to support the workers' compensation judge's conclusion that Mr. LaDay did not suffer a compensable mental injury. The workers' compensation judge reviewed Mr. LaDay's testimony regarding the touching/spitting incidents and heard Dr. Davis' testimony regarding the effect the incidents had on Mr. LaDay's emotional status. In the context of Mr. LaDay's employment setting, the workers' compensation judge determined a reasonable person would not have experienced extraordinary stress as a result of Mr. Craft's conduct. Although we agree that Mr. Craft's alleged behavior was ignominious and degrading, the workers' compensation judge was not clearly wrong in concluding the behavior did not constitute extraordinary work stress as required by La.R.S. 23:1021(7)(a).

Mental Injury Caused by Physical Injury
Unlike a mental injury caused by mental stress, a mental injury resulting from a work-related physical injury need not be the result of a sudden, unexpected, and extraordinary stress related to the employment. Compare La.R.S. 23:1021(7)(b) with La.R.S. 23:1021(7)(c). Nevertheless, a physical injury established by objective findings at the time of the event must be clearly shown and the claimed mental illness must be clearly linked to that objective, physical event. Traweek v. City of West Monroe, 30,571 (La.App. 2 Cir. 5/13/98), 713 So.2d 655, 661, writ denied, 98-1936 (La.11/6/98), 727 So.2d 449.[6] The workers' compensation judge made no specific reference to Mr. LaDay's claim that his mental injury was caused by a physical injury. Silence in a judgment as to any part of demand made in litigation is construed as rejection of that part of claim. Gill v. Matlack, Incorporated, 94-2546 (La.App. 1 Cir. 10/6/95), 671 So.2d 395, 397 n. 5. Therefore, we review this issue as a rejection by the workers' compensation judge of Mr. LaDay's claim.
The alleged offensive physical contact by Mr. Craft in this case has been characterized by Mr. LaDay as an "inappropriate touching," or as having been "grabbed" on the buttocks. According to Mr. LaDay, the "touch was of a nature and duration that [he] felt was intentional, sexually oriented, and [of a] very unprofessional manner." However, in deposition testimony, Mr. LaDay clearly testified that the touching incident did not result in any physical injury to his body. Further, there is no evidence in the record that the two alleged episodes of spitting resulted in any physical injury to Mr. LaDay's body.
Based on the record, we see no error in the workers' compensation judge's rejection of Mr. LaDay's claim that he suffered a mental injury caused by a physical injury. Mr. LaDay failed to establish a physical injury by objective evidence. To the contrary, Mr. LaDay's own testimony establishes that he suffered no physical injury at all.

DECREE
For the foregoing reasons, the workers' compensation judge's judgment, denying *70 Mr. LaDay's claim for workers' compensation benefits, is AFFIRMED. Costs of this appeal are assessed to Mr. LaDay.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In his disputed claim for compensation, Mr. LaDay listed Liberty Mutual Insurance Company as Catalyst's insurer. All defensive pleadings in the record were filed on behalf of Catalyst and Liberty Mutual. However, the judgment does not specify in whose favor it was rendered. For purposes of this appeal, we assume the denial of Mr. LaDay's claim is a denial of any and all claims against Catalyst and Liberty Mutual.
[3] We note that although Catalyst moved for a directed verdict in this matter, the proper procedural device used to dismiss a claimant's action in a trial before a workers' compensation judge, after the claimant has completed the presentation of his evidence, is a motion for an involuntary dismissal. La. C.C.P. art. 1672(B); see Allstate Insurance Company v. Ford Motor Company, 00-710 (La. App. 3 Cir. 11/14/00), 772 So.2d 339, 346 n. 1.
[4] Although this opinion does not address each assignment of error individually, it disposes of all issues raised.
[5] Although the Monsanto case involved a claim for intentional infliction of emotional distress, we find the cited principles, are used to determine what conduct is outrageous enough to constitute intentional infliction of emotional distress, are also applicable to determine whether, in a workers' compensation setting, the stress resulting from a mental injury is extraordinary.
[6] In Traweek, 713 So.2d at 661, the Second Circuit Court of Appeal affirmed a judgment awarding a claimant workers' compensation benefits for a mental injury resulting from a physical injury. In discussing the claimant's proof of a physical injury, the court noted that there was undisputed evidence that the claimant suffered "significant physical trauma" as the result of being sprayed with pepper spray, which caused "a burning sensation to the skin, irritation of mucosa of the eyes, throat and nose, and difficulty breathing." No similar objective evidence exists in the present case.