PETERS, J.
Lin these consolidated workers’ compensation cases, the plaintiff, Steven Eubanks, appeals a judgment dismissing his claim for indemnity and medical benefits arising from injuries he sustained in an October 23, 2007 accident while working for Kepco Operating, Inc. d/b/a Mohawk Well Services (Kepco). For the following reasons, we reverse the judgment of the workers’ compensation judge (WCJ) and render judgment awarding Mr. Eubanks workers’ compensation benefits as well as statutory penalties and attorney fees.
DISCUSSION OF THE RECORD
On October 23, 2007, Mr. Eubanks was employed by Kepco as a floor hand on a drilling rig. He was injured while attempting to assist four co-workers in attaching a devise known as the “smokestack” [1] to another section of the rig known as the “trigger.” In order to attach the smokestack to the trigger, the five men were required to lift the smokestack over their heads and push it upright until it was vertically in position over the trigger. In working as a team to raise the smokestack, the worker in the top position would ultimately lose contact with the piece of equipment and would then move to the bottom portion, reestablish contact, and continue pushing upward. This rotation continued until the smokestack reached the vertical position over the trigger.
As Mr. Eubanks reached the top position a second time during the process, he lost control of the smokestack and it fell through his hands and hit him on the shoulder. According to Mr. Eubanks, he immediately felt a warm, tingling sensation in his back and became “stove up.” He reported his injury to his supervisor, Bobby Purvis, but continued working that day. However, by the third day, he was having 1 ¡.difficulty moving his legs to such an extent that he could hardly engage the clutch on his vehicle while driving to work. When he arrived at the work site, he could not exit his vehicle. Mr. Purvis instructed a co-worker to drive Mr. Eubanks home. *1050 Mr. Eubanks never returned to work with Kepco.
Kepco paid Mr. Eubanks no benefits and, on March 31, 2008, he filed a disputed claim for compensation. Less than one month later, Mr. Eubanks and Kepco entered into a compromise of the claim wherein Kepco agreed to pay Mr. Eubanks indemnity benefits for nine weeks between October 23, 2007, and April 15, 2008, calculated at the rate of $426.67 per week and totaling $3,840.21. Additionally, Kepco agreed to begin paying Mr. Eubanks weekly indemnity benefits at the rate of $426.67 beginning April 16, 2008.[2] In exchange for this payment, Mr. Eubanks agreed to dismiss any claims for additional indemnity benefits for the period between the date of the accident and April 15, 2008, as well as his claim for statutory penalties and attorney fees that might have been owed for his employer’s actions or inac-tions during that same period. Additionally, as a part of the compromise agreement, Mr. Eubanks reserved his right to seek future indemnity benefits, including penalties and attorney fees, relating to his October 23 work accident. Based on this compromise agreement, and pursuant to a joint motion of the parties, on April 28, 2008, the WCJ executed an order dismissing Mr. Eubanks’ pending claim. In addressing the preservation of rights, both the joint motion and the order of dismissal specifically referenced the accident of October 23, 2007.[3]
From the time of the accident through the April 15, 2008 settlement, Mr. Eu-banks received medical treatment from two sources — the Huey P. Long Medical Center (Medical Center) in Pineville, Louisiana,[4] and Dr. Robert A. Boisvert, an Alexandria, Louisiana chiropractor.
Two days after the accident, on October 25, 2007, Mr. Eubanks sought treatment at the Medical Center for his injuries and was treated and released. However, he did not seek additional care from a health care provider for almost one month, partly because Kepco was not paying for his medical expenses. He next appeared at the Medical Center on November 20, 2007, not for his injuries, but because his wife required medical care. According to Mr. Eubanks, he sought and received a work release from the Medical Center on that day because he needed to somehow support his family.
Sometime after obtaining the work release from the Medical Center, Mr. Eu-banks began working for Thomas R. Floyd Mason Contractor, Inc., a contracting firm which, at that time, was constructing a prison in Jena, Louisiana. He took a job with the contracting firm because Kepco refused to allow him to return to work despite the work release. In early January of 2008, Mr. Eubanks experienced severe lower back pain while moving some cinder blocks on the job and was forced to stop |4working. This incident caused him return to the Medical Center for additional treatment.
*1051 On January 7, 2008, Mr. Eubanks returned to the Medical Center and was examined and released on that day. However, a physician at the Medical Center scheduled him for a January 25, 2008 MRI. The results of the MRI established that Mr. Eubanks suffered from an extruded disc at L5-S1, three protruding discs at L4-5, L3-4, and L2-B, and a narrowing of the spinal canal.
Approximately two weeks later, on February 9, 2008, Mr. Eubanks was treated at the LaSalle General Hospital in Jena, Louisiana, for injuries sustained in a motor vehicle accident which occurred that day. The hospital released Mr. Eubanks with a diagnosis of acute cervical myofascial strain. Ten days later, on February 19, 2008, Mr. Eubanks began treatment with Dr. Boisvert. Dr. Boisvert’s emphasis included treatment for both the cervical strain sustained in the automobile accident as well as the lower back complaints.
Kepco paid Mr. Eubanks the lump sum of $3,840.21 pursuant to the terms of the compromise agreement.[5] However, despite acknowledging that there would be no interruption of benefits after the April 15 settlement date because weekly payments were to begin anew immediately, Kepco’s next weekly payment was not tendered until May 22, 2008. Kepco then skipped a week and payed another weekly benefit on June 4, 2008. It paid no weekly benefits thereafter.
Despite having stopped all indemnity benefits in June of 2008, Kepco did not file a disputed claim related to Mr. Eubanks’ entitlement to indemnity benefits until 1^August 21, 2008. In that filing, Kepco sought to have Mr. Eubanks examined by its choice of orthopedic surgeon, Dr. Milan Mody, of Shreveport, Louisiana. Additionally, Kepco questioned whether Mr. Eu-banks’ continuing disability was related to the October 2007 work accident and, therefore, whether Kepco was obligated to pay him additional indemnity and or medical benefits. Between June of 2008 and August 21, 2008, Mr. Eubanks’ only medical treatment was that provided by Dr. Bois-vert.
By correspondence dated August 27, 2008, Mr. Eubanks’ counsel wrote Kepco seeking reinstatement of the indemnity benefits. Kepco responded by a letter dated September 9, 2008, asserting that its good faith reasons for stopping payment of the benefits was the November 20, 2007 work release and the January 2008 lifting incident. Three days later, on September 12, 2008, Mr. Eubanks filed a disputed claim for indemnity benefits, statutory penalties, and attorney fees. The WCJ consolidated these two separate filings for trial purposes.
As stated above, Mr. Eubanks’ medical treatment between April 15, 2008, and August 21, 2008, was his continued treatment by Dr. Boisvert. The doctor had concluded that by May 20, 2008, Mr. Eubanks had fully recovered from the cervical injury he sustained in the automobile accident, but that the lower back complaints related to the October 23, 2007 accident needed further treatment. Dr. Boisvert continued treating Mr. Eubanks through September 12, 2008.
On June 3, 2009, or almost nine months after Mr. Eubanks stopped seeing Dr. Boisvert, Dr. David S. Muldowny, a Lafayette, Louisiana orthopedic surgeon, examined Mr. Eubanks. After examining him *1052 and reviewing the diagnostic studies from the Medical Center, Dr. Muldowny con-eluded that Mr. Eubanks suffered from 1 ^a herniated lumbar disc, as well as spinal stenosis. He recommended that Mr. Eu-banks update the Medical Center lumbar MRI and return for further evaluation. Unfortunately, Mr. Eubanks was unable to obtain a more recent MRI.
Mr. Eubanks next sought medical attention for his lumbar injury in July of 2009, when he returned to the Medical Center because of an incident which had occurred three to four days before at his daughter’s Marksville, Louisiana home. According to Mr. Eubanks, his back “locked up” after he hooked a trailer to a vehicle at his daughter’s home and by the next day he could not even get up off the floor. After remaining in this condition for three to four days, he was transported to the Medical Center by ambulance. There he was treated with medication and an injection. The only other time he went to the Medical Center was on January 9, 2010, when he was again treated for back pain.
At the request of Kepco, Dr. Mody examined Mr. Eubanks on September 3, 2009, or some three months after Dr. Mul-downy’s examination. Although Dr. Mody was of the opinion that it was unlikely Mr. Eubanks would ever again perform any significant manual labor, he also concluded that his lower back condition was more likely than not the result of a degenerative disc pathology rather than his work accident.
Following a January 15, 2010 trial on the merits, the WCJ took the matter under advisement. Thereafter, on May 17, 2010, the WCJ rendered oral reasons for judgment finding that Mr. Eubanks failed to prove that his work accident was the Ueause of his disability.[6] A judgment dismissing Mr. Eubanks’ claims against Kepco with prejudice was rendered on June 8, 2010.
In his appeal, Mr. Eubanks raises one assignment of error and breaks that assignment of error down into four separate issues. The assignment of error states:
The Workers’ Compensation Judge manifestly erred in finding that claimant’s injuries and disability could as likely have been caused by a second accident or by degenerative disc disease as by the accident he suffered on October 23, 2007.
The issues encompassed within that assignment of error include the following:
I. WAS THE INJURY SUFFERED BY STEVEN EUBANKS A RE- . SULT OF DEGENERATIVE DISC PATHOLOGY EXISTING PRIOR TO THE ACCIDENT OF OCTOBER 23, 2007?
II. WAS THE INJURY SUFFERED BY STEVEN EUBANKS CAUSED BY AN ACCIDENT WHICH OCCURRED DURING HIS EMPLOYMENT WITH THOMAS R. FLOYD MASONRY CONTRACTOR IN DECEMBER, 2007?
III. WAS THE INJURY SUFFERED BY STEVEN EUBANKS CAUSED BY THE WORK ACCIDENT WHICH OCCURRED ON OCTOBER 23,2007, DURING HIS EMPLOYMENT WITH MOHAWK WELL SERVICES?
IV. DID MOHAWK WELL SERVICES REASONABLY CON *1053 TROVERT THE CLAIM OF WRONGFUL TERMINATION OF BENEFITS FILED BY STEVEN EUBANKS?
OPINION
The first three issues relate to causation and are resolved in Mr. Eu-banks’ favor because of the compromise which led to the April 28, 2008 order dismissing his original claim, as it stood at that time, with prejudice. In reaching this conclusion, we 18note at the outset that the April 28, 2008 order constitutes a consent judgment between the parties which has specific legal effects.
A consent judgment is a bilateral contract in which parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing hope of gain against fear of loss. La.Civ.Code art. 3017; Plaquemines Parish, Government v. Getty Oil Co., 95-2452 (La.5/21/96); 673 So.2d 1002. “A judgment, whether it results from the assent of the parties or is the result of a judicial determination after a trial on the merits, is and should be accorded sanctity under the law.” Id. at 1006.
Deville v. Rapides Area Planning Com’n, 97-1437, p. 8 (La.App. 3 Cir. 6/17/98), 715 So.2d 577, 580-81, writ denied, 98-1943 (La.10/30/98), 727 So.2d 1167.
No matter how “unjust, erroneous, or illegal the settlement may be[,] the parties can only claim under it that which, by its terms, the judgment awards.” Cheramie v. Vegas, 468 So.2d 810, 812-13 (La.App. 1 Cir.), writ denied, 470 So.2d 122 (La.1985).
Encompassed within the compromise agreement and consent judgment of April 2007, is an agreement between the parties that Mr. Eubanks sustained a work-related injury on October 23, 2007, that he was disabled for at least nine weeks between the date of the accident and April 15, 2007, and that he was still disabled as of April 16, 2008.[7]
Despite the clear language of the compromise judgment, Kepco, in its August 21, 2008 disputed claim, questioned whether Mr. Eubanks’ continuing disability[8] was related to the October 2007 work accident and, therefore, whether it was obligated to pay him additional indemnity and or medical benefits. Additionally, when it 19answered Mr. Eubanks’ September 12, 2008 disputed claim filing, Kepco asserted that Mr. Eubanks had violated La.R.S. 23:1208 by failing to disclose income he earned subsequent to the October 23, 2007 accident and that he failed to disclose subsequent problems with his back after the accident. Both of these claims relate to the period before April 15, 2008. These failures, Kepco asserted, were sufficient for Mr. Eubanks to forfeit his right to receive indemnity benefits. Kepco later amended its answer to assert an additional violation of La.R.S. 23:1208 based on Mr. Eubanks’ denial that he suffered from back problems prior to his work accident.
In summary, by filing the disputed claim, and in its answer to Mr. Eubanks’ disputed claim, Kepco is basically attempting to change the terms of the compromise agreement and judgment arising therefrom. In considering this attempt, we first note that “[i]f changes are warranted, such must be effected before [the judgment’s] *1054 finality within the ways and means provided by law.” Id. at 813. Kepco sought neither a new trial nor an appeal in this matter. La.Code Civ.P. arts. 1972 and 1978; La.Code Civ.P. arts. 2087 and 2123. Thus, the consent judgment is a final judgment.
Additionally, while a final judgment may be attacked for either vices of form or proof that it was obtained through fraud or ill practices [La.Code Civ.P. arts. 2002 and 2004], Kepco’s original disputed claim asserted neither vices as to form nor fraud or ill practices. It only questioned Mr. Eubanks’ continuing disability. Additionally, Kepco presented no evidence to establish its subsequent claims that somehow it had been misled in the compromise agreement. Thus, Kepco is bound by the terms of the compromise agreement and subsequent judgment, including the finding that Mr. Eubanks was injured and disabled as a result of the October 23, 2007 work accident.
| inMr. Eubanks attempted to address the issue of the compromise judgment by filing a peremptory exception of res judicata. However, the WCJ erroneously rejected this exception and based much of its conclusion that Mr. Eubanks’ disability was not caused by the October 23, 2007 work accident on the work release and the January 2008 cinder block issue. We find that Kepco is bound by its stipulation in the compromise agreement that Mr. Eubanks sustained an October 23, 2007 work accident and that his disability as it existed on April 15, 2008, was caused by the accident. In reaching this conclusion, we notice on our own notion an exception of res judicata as to those issues. La.Code Civ.P. art. 927(B).

DISABILITY ISSUE SUBSEQUENT TO APRIL IS, 2008

Because all questions concerning causation and Mr. Eubanks’ inability to return to work prior to April 15, 2008, were settled by the compromise between the parties, the remaining issue relates to Mr. Eubanks’ ability to return to work after that date. As this issue was not addressed by the WCJ, we will conduct a de novo review of the record in order to reach a determination.
Pursuant to La.R.S. 23:1221(1), a worker, who satisfactorily proves his inability to physically engage in any employment or self-employment as a result of a work-related injury, will be awarded temporary total disability benefits. Proof is by clear and convincing evidence, unaided by any presumption of disability. La.R.S. 23:1221(l)(c). Disability can be proven by both medical and lay testimony, all of which the factfinder weighs in determining whether the injured worker has satisfied his burden of proof. Jack v. Prairie Cajun Seafood Wholesale, 07-102 (La.App. 3 Cir. 10/3/07), 967 So.2d 552, writ denied, 07-2388 (La.2/15/08), 976 So.2d 178.
|nKepco’s position in this regard begins with little initial support. Not only did it fail to comply with its promised performance under the compromise, but it had no new medical report upon which to base its decision to not pay Mr. Eubanks the appropriate benefits after April 15, 2008, and it has no explanation for the two non-sequential payments in May and June of 2008. It simply decided to ignore the agreement it had entered into and unilaterally terminate benefits. Even when it filed its August 21, 2008 disputed claim, nothing had changed from the April 2008 compromise agreement. That is to say, Kepco had no evidence to substantiate its argument that Mr. Eubanks was no longer disabled and could return to gainful employment.
*1055 In fact, it is significant to note that Dr. Mody, Kepco’s choice of physician, is the only medical provider who has rendered an opinion on Mr. Eubanks’ continued disability — and as of his September 3, 2009 examination, concluded that Mr. Eubanks continued to be unable to return to gainful employment.[9] In his report, he stated:
It appears that Mr. Eubanks has been in chiropractic care after his work related injury, but has not had any formal active physical therapy incorporating lumbar stabilization exercises. I would recommend a 6 week regimen of active lumbar stabilization exercises. The patient will be considered at maximum medical improvement following this intervention. A daily home exercise program along with scheduled anti-inflammatories would be recommended for his chronic spinal complaints.
Given his multilevel lumbar disc pathology, it is very unlikely that Mr. Eubanks will be able to return to his prior position or any significant manual labor type work. Therefore recommendation is made for him to proceed with sedentary to light duty work with permanent restrictions. Full duty work or manual labor is likely to result in further deterioration |12of his spinal pathology and could result in increased chronic low back and/or leg pain.
Mr. Eubanks testified that at the time of the trial, he was not in severe pain because he had received a shot for his back pain the week prior to trial, but he stated that if he attempted to work a few days, he would be physically down thereafter. He requested additional treatment so that he could return to gainful employment. According to Mr. Eubanks, his leg shakes during the night and this prohibits him from sleeping, when he attempts to lift things he pays a price for days thereafter, and that exertion causes him to have difficulty getting out of bed the next day. Still, he attempts to help at home by washing clothes and dishes. While he has always enjoyed hunting, fishing, and riding four-wheelers, the best he has been able to do since the accident is to ride a four-wheeler across the yard a few times.
Mr. Eubanks’ wife, Odelia, testified that prior to this accident, Mr. Eubanks’ health was good, although he had on occasion suffered pulled muscles or spasms in his back. She testified that after the accident, she was required to do just about everything. According to Mrs. Eubanks, the pain can become intense for her husband if he simply moves his back a certain way. She has observed him catch himself and scream from severe pain when aggravating his condition. His condition has become so bad that she has to help him sit, stand up, and put on his socks. She also supported her husband’s assertion that he has difficulty sleeping because his leg begins to hurt in the night. Social activities, according to Mrs. Eubanks, are a thing of the past.
Mrs. Eubanks also supported Mr. Eu-banks’ testimony concerning the July 2009 Marksville incident. According to Mrs. Eubanks, her husband remained on the floor for four days, unable to move because of back pain. It was she who finally convinced him to be transported by ambulance to the Medical Center.
|,sBased on the medical evidence before us, we find that Mr. Eubanks has proven *1056 that his inability to engage in any employment or self-employment as a result of his October 23, 2007 work accident has extended past April 16, 2008. Accordingly, we find that he is entitled to temporary total disability benefits onwards from April 16, 2008, at the rate of $426.67 per week, as set out in the prior consent judgment. We further find that Mr. Eubanks is entitled to all reasonable and necessary medical treatment, including specifically that recommended by Dr. Muldowny.

STATUTORY PENALTIES AND ATTORNEY FEES

Finally, Mr. Eubanks argues that he is entitled to penalties and attorney fees as Kepco’s termination of his benefits was not based on a reasonable controversion of his claim. We agree and find that penalties and attorney fees are appropriate.
Louisiana Revised Statutes 23:1201(F)(2) provides for the payment of penalties and attorney fees based on the employer’s failure to provide payment of benefits unless the claim is reasonably controverted or the failure to pay results from conditions over which the employer had no control.
[T]o determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer ... possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Brown v. Texas-LA Cartage, Inc., 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890.
In its April 16, 2008 letter, Kepco informed Mr. Eubanks’ counsel that it would commence paying weekly indemnity benefits to Mr. Eubanks in the amount of $426.67 subsequent to the compromise agreement. In reality, it made only two more payments of indemnity benefits to Mr. Eubanks, one on May 22, 2008, and another 114on June 4, 2008. Since Kepco stipulated that Mr. Eubanks’ disability pri- or to April 15, 2008, was caused by the October 23, 2007 work accident, it now cannot rely on medical records predating April 15, to support its termination of his benefits. By June 5, 2005, Kepco had no other evidence on which to base its termination of his benefits. Thus, we find that Kepco failed to reasonably controvert Mr. Eubanks’ claim and that this failure did not result from conditions beyond its control. Accordingly, we render judgment and award Mr. Eubanks $2,000.00 in statutory penalties and $15,000.00 in attorney fees.
DISPOSITION
For the foregoing reasons, we reverse the judgment of the WCJ and render judgment in favor of the plaintiff, Steven Eu-banks, and against the defendant, Kepco Operating, Inc. d/b/a Mohawk Well Services, awarding him temporary total disability benefits in the amount of $426.67 per week from April 16, 2008, subject to a credit for the payments made on May 22 and June 4, 2008. We further rendered judgment in favor of the plaintiff, Steven Eubanks, and against the defendant, Kepco Operating, Inc. d/b/a Mohawk Well Services, awarding him $2,000.00 in statutory penalties and $15,000.00 in attorney fees. Legal interest shall run on the awards according to law. We assess all costs of these proceedings to defendant, Kepco Operating, Inc. d/b/a Mohawk Well Services.
REVERSED AND RENDERED.

. The smokestack is thirty-five feet in length, eleven inches in diameter, one quarter-inch thick, and made of iron.

.While this portion of the agreement was not mentioned in the joint motion to dismiss filed by the parties, it is specifically set out in an April 16, 2008 letter from counsel for Kepco to counsel for Mr. Eubanks transmitting the lump sum settlement amount and settlement papers. Specifically, the letter states: "Lastly, my clients will begin paying indemnity benefits at a rate of $426.67 weekly and will forward those directly to your office.”

. Both the motion and order state that Mr. Eubanks reserved all rights to future workers' compensation benefits that might become due after April 15, 2008 "as it pertains to the work accident which occurred on or about October 25, 2007." (Emphasis added.)

. The Huey P. Long Medical Center is a facility operated through the Louisiana State University Health Care Services Division.

. The nine weeks represented by the lump sum payment were specifically set forth in the joint motion to dismiss Mr. Eubanks’ claim. The payment represented the week following the accident, the week following the automobile accident, and the seven weeks after Dr. Boisvert began treating Mr. Eubanks on February 19, 2008, through April 15, 2008.

. Between trial and the rendition of the oral reasons for judgment, Mr. Eubanks filed an exception of res judicata and a motion to stay the proceedings based on the particulars of the compromise the parties had previously entered into. However, the WCJ rejected the exception and motion after a hearing held on April 5, 2010.

. As previously noted, the language of the April 16, 2008 letter from Kepco's counsel and the specific language of both the motion to dismiss and the order dismissing the litigation set forth these particulars.

. This assertion obviously relates back to April 15, 2008, since Kepco paid none of the promised indemnity benefits immediately following the compromise agreement.

. Dr. Muldowny never received an updated MRI for him to complete his evaluation, but in a January 12, 2010 letter to Mr. Eubanks’ counsel, he acknowledged that the 2008 MRI established that Mr. Eubanks suffered from a large disc herniation at L5-S1 and a large broad-based bulge at L4-5, both of which caused considerable narrowing of the spinal canal.