**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0793

MICHAEL THIBODEAUX

VERSUS

ST. MARY PARISH SCHOOL BOARD

**'JUN 2 4 2020**

Judgment rendered: _____

* * * * *

On Appeal from the
Office of Workers' Compensation
District 9, Parish of St. Mary
State of Louisiana
No. 16-08101
The Honorable Elizabeth Lanier, Works' Compensation Judge

* * * * *

John J. Rabalais
Janice B. Unland
Rudolph C. Boeneke
Covington, Louisiana

Attorneys for Appellant
St. Mary Parish School Board


Donovan, O'Pry, II
John P. Barron
Lafayette, Louisiana

Attorney for Appellee
Michael Thibodeaux

* * * * *

BEFORE: McDONALD, WELCH, AND HOLDRIDGE, JJ.

*Welch, J. dissents and assigns reasons*

**HOLDRIDGE, J.**

In this appeal, the St. Mary Parish School Board challenges a judgment of the Worker's Compensation Judge (WCJ) awarding compensation benefits, penalties, and attorney's fees to its former employee, Michael Thibodeaux. We affirm and issue this memorandum opinion in compliance with Uniform Rules—Courts of Appeal, Rule 2-16.1B.

On March 10, 2016, Mr. Thibodeaux was punched in the chest by a high-school student while acting in the course and scope of his employment as a teacher for the St. Mary Parish School Board (School Board). On December 28, 2016, following the School Board's failure to pay him any workers' compensation benefits, Mr. Thibodeaux filed this disputed claim in the Office of Worker's Compensation. Mr. Thibodeaux sought to recover workers' compensation indemnity and medical benefits, penalties, and attorney's fees from the School Board. The School Board acknowledged that a work accident occurred on March 10, 2016, but asserted that Mr. Thibodeaux was not disabled as a result of that work accident, and therefore, was not entitled to recover any workers' compensation benefits.

Mr. Thibodeaux was the only witness who testified at the hearing in this matter. Considerable medical evidence, in the forms of depositions, reports, affidavits and medical records was introduced by the parties. Thereafter, the WCJ rendered judgment in favor of Mr. Thibodeaux and against the School Board, specifically finding as follows:

1) Mr. Thibodeaux suffered a compensable accident on March 10, 2016 and a compensable injury when he was punched in the chest by a student;

2) Mr. Thibodeaux's injury included an exacerbation and aggravation of a pre-existing heart condition;

2

3) The exacerbation and aggravation of Mr. Thibodeaux's heart condition by the act of the student punching him in the chest also created Mr. Thibodeaux's psychological injury;

4) Mr. Thibodeaux met his burden of proof by clear and convincing evidence to establish a physical/mental injury was sustained by him on March 10, 2016;

5) Mr. Thibodeaux is currently at Temporary Total Disability Status (TTD) and has been so since the date of the accident;

6) Mr. Thibodeaux is owed TTD benefits at the rate of $649.00 per week from the date of the accident to the present and continuing;

7) Mr. Thibodeaux briefly worked with Coastal Safety and therefore the School Board is entitled to a credit for wages earned by Mr. Thibodeaux through this employment;

8) Mr. Thibodeaux is entitled to all reasonable and necessary medical treatment including continued treatment from psychologist Dr. C. Scott Eckholtd and reimbursement for out of pocket costs in the amount of $1,800.00 for treatment rendered by Dr. Eckholtd;

9) All medical treatment rendered to Mr. Thibodeaux from the date of the accident to the present was reasonable and medically necessary;

10) Mr. Thibodeaux is entitled to penalties in the amount of $2,000.00 for the School Board's failure to authorize a choice of physician in the field of psychology/psychiatry, attorney's fees in the amount of $10,000.00, costs, and judicial interest on the judgment amount.

The School Board appealed the judgment, asserting that the WCJ erred in the following respects: (1) finding that Mr. Thibodeaux suffered an exacerbation and aggravation of a pre-existing heart condition and that he was entitled to past and future medical benefits for the same; (2) finding that the exacerbation and aggravation of Mr. Thibodeaux's pre-existing heart condition by the action of the student punching Mr. Thibodeaux in the chest also created Mr. Thibodeaux's psychological injury and that Mr. Thibodeaux met his burden of proving a

3

physical/mental injury by clear and convincing evidence, as well as awarding past and future medical benefits for the same; (3) finding that Mr. Thibodeaux was currently TTD, had been TTD since the date of the accident, and was owed back TTD from March 11, 2016, to present and continuing thereafter; (4) finding that all medical treatment rendered to Mr. Thibodeaux from the date of the accident to the present was reasonable and medically necessary; and (5) ordering the School Board to pay the $2,000.00 penalty as well as attorney's fees, costs, and judicial interest.

After an *ex proprio motu* examination of the record, this court issued a Show Cause Order (SCO) finding that the February 28, 2019 judgment of the WCJ was ambiguous as to the specific relief granted because it was not possible to determine, from the language of the judgment alone, the amount of the credit for wages earned by Mr. Thibodeaux through his employment with Coastal Safety. On September 30, 2019, another panel of this court maintained the appeal, but reserved the final determination of that issue to this panel. **Thibodeaux v. St. Mary Parish School Board**, 2019-0793 (La. App. 1st Cir. 9/30/19) (unpublished).

A final judgment shall be identified as such by appropriate language. La. Code Civ. P. art. 1918. A final appealable judgment must be "precise, definite and certain." **Laird v. St. Tammany Parish Safe Harbor**, 2002-0045 (La. App. 1st Cir. 12/20/02), 836 So.2d 364, 365. In order to be appealable, a judgment must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. **Id.**; **Carter v. Williamson Eye Center**, 2001-2016 (La. App. 1st Cir. 11/27/02), 837 So.2d 43, 44.

The judgment appealed from meets all of these criteria. It renders judgment in favor of Mr. Thibodeaux and against the School Board on each of the elements

4

of Mr. Thibodeaux's workers' compensation claim. The judgment extensively details the relief to which Mr. Thibodeaux is entitled. Although the WCJ awarded the School Board an employment credit, but did not specify the precise amount of that credit, we note that the employment credit is not at issue in this appeal. Rather, the WCJ's final rulings on Mr. Thibodeaux's entitlement to workers' compensation benefits are contested in this appeal. Additionally, we note that the amount of the credit can easily be calculated by the parties, and should a dispute arise, the parties can petition the OWC to resolve that issue, as the OWC retains continuing jurisdiction over each workers' compensation case. La. R.S. 23:1310.8A(1). For all of these reasons, we conclude the failure of the WCJ to specify the amount of the employment credit does not deprive this court of appellate jurisdiction to review the WCJ's final judgment awarding Mr. Thibodeaux workers' compensation benefits against the School Board, and we maintain the appeal.

In order to recover workers' compensation benefits, a worker must prove: (1) a work-related accident; (2) the accident caused an injury, and (3) the injury caused the disability. **Roussell v. St. Tammany Parish School Board**, 2004-2622 (La. App. 1st Cir. 8/23/06), 943 So.2d 449, 457. The WCJ's factual determinations regarding an employee's entitlement to compensation benefits, including whether the employee has discharged his burden of proof, are governed by the manifest error standard of appellate review. **Id.**; **Dean v. Southmark Construction**, 2003-1051 (La. 7/6/04), 879 So.2d 112, 117; **Gabriel v. Lafourche Parish Water District**, 2011-0930 (La. App. 1st Cir. 12/21/11), 80 So.3d 780, 782. Additionally, the WCJ's determination that an employer has not reasonably controverted an employee's compensation claim, so as to subject that employer to penalties and attorney's fees pursuant to the Workers' Compensation Act, is a

question of fact subject to the manifest error standard of review. **Bridges v. Gaten's Adventures Unlimited, L.L.C.**, 2014-1132 (La. App. 1st Cir. 4/2/15), 167 So.3d 992, 1005.

The manifest error standard of review precludes an appellate court from setting aside a WCJ's factual finding unless that finding is clearly wrong in light of the record viewed in its entirety. **Dean**, 879 So.2d at 117. The issue to be resolve by this court is not whether the WCJ's rulings are right or wrong, but whether those rulings are reasonable. **Stobart v. State, Department of Transportation and Development**, 617 So.2d 880, 882 (La. 1993).

There is ample evidence in the record to support the WCJ's conclusion that Mr. Thibodeaux suffered a disability as a result of the battery inflicted upon him by a high school student, entitling Mr. Thibodeaux to recover indemnity benefits and medical benefits from the School Board. Likewise, the WCJ's factual determinations that Mr. Thibodeaux is entitled to recover penalties and attorney's fees for the School Board's refusal to pay Mr. Thibodeaux any compensation benefits following his injury are entirely reasonable and may not be disturbed by this court on appeal.

The WCJ issued extensive written reasons for judgment accurately setting forth the pertinent facts and the law applicable to those facts. We agree with the WCJ's well-reasoned analysis, and in affirming all of the rulings contested in this appeal, we adopt WCJ's written reasons as our own in this memorandum opinion.[1] All costs of this appeal are assessed to appellant, the St. Mary Parish School Board, in the amount of $1,034.12.

**AFFIRMED.**

---

[1] A copy of the WCJ's written reasons for judgment is attached to this opinion.

STATE OF LOUISIANA

OFFICE OF WORKERS' COMPENSATION

MICHAEL THIBODEAUX,     *    DISTRICT 9
                Employee
VERSUS                  *    DOCKET NO. 16-08101

ST. MARY PARISH SCHOOL BOARD
                Employer

---

## REASONS FOR JUDGMENT

This matter came before this Court on October 16, 2018, and October 24, 2018, for a trail on the Merits. This Court rendered a final judgment on February 28, 2019, finding in favor of the claimant/employee Michael Thibodeaux.

## TRIAL ISSUES

A. Whether the claimant suffered a compensable accident with injury on March 10, 2016.

B. What is the nature and extent of the claimant's injury or disability.

C. Whether the claimant met his burden of proof to establish a physical/mental or mental/mental claim under the Workers' Compensation Act.

D. Whether the claimant is entitled to reimbursement of past medical expenses for the treatment of Dr. C. Scott Eckholdt in the amount of $1,800.00.

E. Whether the claimant is entitled to ongoing medical treatment from psychologist, Dr. C. Scott Eckholdt.

F. Whether or not the claimant is entitled to indemnity benefits at the rate of $649 per week from March 10, 2016 to present and on an ongoing basis.

G. Whether or not the claimant is entitled to penalties, attorney fees, interest, and

1

523

costs for the employer's failure to provide the claimant's choice of physician in the field of Cardiology, failure to provide the claimant's choice of physician in the field of Psychology, failure to institute medical benefits, and failure to institute indemnity benefits.

## I. THE EVIDENCE ENTERED AT TRIAL

Mr. Thibodaux was the only witness to testify at the trial of this matter. Although the School Board listed several witnesses in its Pre-Trial Statement, including the school's principal, Rachel Sanders, none of these witnesses were called to testify on behalf of the School Board. Thus, Mr. Thibodeaux's trial testimony was uncontested and should be accepted as true by this Court. See *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146, 1147 (La. 1979) (In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of the testimony.)

Mr. Thibodeaux's trial testimony revealed that he was violently attacked by a student while working within the course and scope of his employment as a teacher at Patterson Senior High School on March 10, 2016. At the time, Mr. Thibodeaux was employed by the School Board as a high school teacher and taught Algebra and Oil and Gas Processing.[1] On the date in question, Mr. Thibodeaux was working recess duty in the school's gym.[2] The students were in the gym that day due to foul weather conditions.[3] Mr. Thibodeaux noticed one of the students standing on top of the bleachers high-fiving with several of his friends.[4] Patterson Senior High required the students to remain seated in the bleachers with no unnecessary horseplay.[5]

---

[1] Record, p. 15, l. 15 – 19.
[2] Record, p. 15, l. 25 – 30.
[3] Record, p. 15, l. 25 – 30.
[4] Record, p. 15, l. 32; p. 16, l. 1 – 9.
[5] Record, p. 16, l. 5 – 9.

2

Mr. Thibodeaux got the attention of the student and told him he would have to be seated.[6] The student responded by saying "[f]uck you. I don't have to do what you tell me to do."[7] The student then became belligerent with Mr. Thibodeaux.[8] Mr. Thibodeaux directed him to come down the bleachers but the student continued to curse at him.[9] The student eventually came down the bleacher and as he approached, Mr. Thibodeaux asked him for his name.[10] However, the student refused to reply.[11] Mr. Thibodeaux then asked the student for his ID.[12] The student responded with "[f]uck you. I don't have to do what you tell me to do. I'm leaving anyway."[13] At that point, Mr. Thibodeaux responded that the student was not going to be allowed to leave.[14] At this point, the student attempted to push past Mr. Thibodeaux using the palms of his hand.[15] Mr. Thibodeaux then grabbed him by his hoodie sleeve and told him that he was taking him to the office to see Mr. Spradling the disciplinarian.[16] The student then became much more aggressive using his body and hands to try to push away from Mr. Thibodeaux.[17] Mr. Thibodeaux continued to usher him towards the office.[18]

Mr. Thibodeaux was able to successfully usher the student into the office.[19] Once they got into the office, the student was able to break away from Mr. Thibodeaux and started screaming at him "[m]otherfucker, you don't know me and I'm gonna to whip your ass."[20]

---

[6] Record, p. 16, l. 16 – 18.
[7] Record, p. 16, l. 21 – 22.
[8] Record, p. 16, l. 22 – 23.
[9] Record, p. 16, l. 23 – 26.
[10] Record, p. 16, l. 27.
[11] Record, p. 16, l. 27 – 28.
[12] Record, p. 16, l. 27 – 28.
[13] Record, p. 16, l. 29 – 30.
[14] Record, p. 16, l. 31 – 32; p. 17, l. 1 – 2.
[15] Record, p. 17, l. 2 – 4.
[16] Record, p. 17, l. 5 – 8.
[17] Record, p. 17, l. 16 – 21.
[18] Record, p. 17, l. 16 – 21.
[19] Record, p. 18, l. 16 – 18.
[20] Record, p. 18, l. 29 – 32.

3

After Mr. Thibodeaux left the student in the office to be disciplined, a lady approached him before he could get back to the gym door. The lady started screaming at him about why he was putting his "motherfucking hands on her son" and that she would whip his ass.[21] At this point, Mr. Thibodeax realized that this was the mother of the kid that he had just brought to the office.[22] Mr. Thibodeaux indicated to the lady that he was on duty and that he would be willing to meet with her to explain why he brought her son to the office as soon as his duty was over.[23] However, she did not accept the response and continued threatening, cursing, and being aggressive and physical in Mr. Thibodeaux's face.[24] At that point, Mr. Thibodeaux continued towards the gym with the mother following and continuing to be argumentative and yelling at him.[25] Once Mr. Thibodeaux got to the doors of the gym, the mother attempted to follow him in.[26] Mr. Thibodeaux told her that she was not allowed to come into the gym and that if she continued he would have no choice but to call the police.[27] Mr. Thibodeaux continued in the gym while the mother stopped momentarily.[28] However, the mother eventually followed him into the gym and continued to confront Mr. Thibodeaux.[29] While this was happening, 50 or 60 students in the gym had gathered around as she continued to yell at Mr. Thibodeaux.[30] Mr. Thibodeaux then tried to get another teacher's attention to tell them to call the police.[31]

As this was happening, and unbeknownst to Mr. Thibodeaux at the time, the mother's oldest son came running down the hallway.[32] He then yelled "[y]ou can't treat my mama like that" and put

---

[21] Record, p. 19, l. 16 – 20.
[22] Record, p. 19, l. 26 – 31.
[23] Record, p. 20, l. 18 – 22.
[24] Record, p. 20, l. 24 – 27.
[25] Record, p. 21, l. 2 – 6.
[26] Record, p. 21, l. 10 – 14.
[27] Record, p. 21, l. 14 – 27.
[28] Record, p. 21, l. 28 – 31.
[29] Record, p. 22, l. 10 – 14.
[30] Record, p. 22, l. 17 – 22.
[31] Record, p. 22, l. 28 – 30.
[32] Record, p. 23, l. 5 – 6.

4

his hand on the back of the kid immediately in front of him, hiking himself up, and punching over the crowd and hit Mr. Thibodeaux directly in the chest.[33] The blow was of such force that it caused Mr. Thibodeaux to stagger and fall back, but he supported himself against the crowd.[34] When asked about the severity of the blow, Mr. Thibodeaux indicated that it was more than full force, as the boy had come down the hall in a full sprint, and catapulted over the crowd to get to him and hit him in one fluid motion into the center of his chest.[35] Immediately after the blow, Mr. Thibodeaux was in shock.[36] Several other teachers and the principal then began showing up.[37] However, the mother was still yelling and the kids were being combative.[38] The principal then began to take over and sent Mr. Thibodeaux to the lounge so that she could handle the situation.[39]

As soon as he got to the lounge, Mr. Thibodeaux began experiencing immediate physical symptoms. Mr. Thibodeaux testified that that he had tightness in his chest and that he seemed to be having a hard time making up enough oxygen to feel stable.[40] Mr. Thibodeaux felt like he wasn't able to breathe and was attempting to suck in air.[41] Mr. Thibodeax described the sensation as being inside of a drum as his heart was pounding so loud in his ears that he was not sure if he was hearing himself talk or anybody else when they would talk.[42] Mr. Thibodeaux also indicated that he felt like he had tunnel vision and that he was in crisis.[43] He felt like his heart was beating in his throat and he was

---

[33] Record, p. 23, l. 5 – 10.
[34] Record, p. 24, l. 8 – 9.
[35] Record, p. 23, l. 29 – 32; p. 24. l. 1– 5.
[36] Record, p. 24, l. 9 – 10.
[37] Record, p. 24, l. 29 – 32.
[38] Record, p. 25, l. 3 – 5.
[39] Record, p. 25, l.10 – 18.
[40] Record, p. 25, l. 26 – 28.
[41] Record, p. 25, l. 28 – 29.
[42] Record, p. 26, l. 1 – 3.
[43] Record, p. 26, l. 1 – 4.

5

not sure if something was going to pop in his head.[44] Mr. Thibodeaux was also sweating profusely and felt dizzy and not in full control of his faculties.[45]

The principal soon returned to the lounge and immediately noticed that Mr. Thibodeaux was having a health crisis.[46] In fact, the principal commented that she did not want Mr. Thibodeaux to die in her hallway and told him that he needed to go home and take care of himself.[47] Mr. Thibodeaux testified that he was extremely concerned for his health and thought that he was having a heart attack.[48] He was not able to calm himself and he could not catch his breath.[49] Mr. Thibodeaux followed his principal's directions and went home.[50] However, the symptoms continued into the evening.[51] Mr. Thibodeaux continued to have tightness in his chest and profuse sweating.[52] Mr. Thibodeaux continued to feel off balance in his head and continued to feel like he was in a "drum or tunnel".[53] Mr. Thibodeaux monitored his blood pressure that evening using a blood pressure monitor and his blood pressure was "completely out of control."[54]

Mr. Thibodeaux attempted to return to work the next day.[55] However, he made it there only about an hour but was soaked with sweat.[56] Mr. Thibodeax was unsteady and was concerned that he was going to have a heart attack.[57] Mr. Thibodeax went back to the principal who agreed with

---

[44] Record, p. 26, l. 4 – 9.
[45] Record, p. 26, l. 7 – 10.
[46] Record, p. 27, l. 5 – 9.
[47] Record, p. 27, l. 2 – 4.
[48] Record, p. 27, l. 13 – 14.
[49] Record, p. 27, l. 15 – 16.
[50] Record, p. 27, l. 18 – 20.
[51] Record, p. 27, l. 21 – 22.
[52] Record, p. 27, l. 25 – 27.
[53] Record, p. 27, l. 28 – 30.
[54] Record, p. 27, l. 30 – 32; p. 28 l. 1 – 3.
[55] Record, p. 28, l. 8 – 9.
[56] Record, p. 28, l. 10 – 15.
[57] Record, p. 28, l. 16 – 23.

6

him that he should go home for the day.[58] Mr. Thibodeaux never returned to work after this point. Mr. Thibodeaux testified that the symptoms continued over the weekend.[59]

Mr. Thibodeaux went in for a meeting with the mother and the principal on Monday in an effort to resolve the situation.[60] However, the meeting only became heated and made things worse.[61] Mr. Thibodeaux testified that the meeting did not do anything to help the symptoms that he was having.[62]

Mr. Thibodeaux continued experiencing severe episodes of uncontrollable heart racing, sweating, shortness of breath, chest tightness, lightheadedness, and dizziness. Having previously suffered from cardiology issues, Mr. Thibodeaux assumed he was having a heart related issue.[63] Mr. Thibodeaux testified that while he had heart related problems in the past, at the time of this incident he was doing very well and was asymptomatic.[64] Mr. Thibodeaux testified that at the time, he had been eating right, on a strict exercise program, and had dropped some weight.[65] The medical records from Dr. Abel revealed that Mr. Thibodeaux's last visit prior to the incident was for a prevention follow-up which took place on August 17, 2015, nearly seven months prior to the work place accident.[66] Dr. Abel noted that Mr. Thibodeaux had made recent life style changes with daily exercise and nutrition and had lost nearly thirteen pounds since his last visit. Dr. Abel noted:

> "Overall, he is doing remarkably well, virtually asymptomatic with his chronic AF. He is asymptomatic from his CHD. His lipids show marked improvement with the medication and lifestyle changes."[67]

---

[58] Record, p. 28, l. 22 – 27.
[59] Record, p. 30, l. 9 – 13.
[60] Record, p. 30, l. 14 – 16.
[61] Record, p. 31, l. 12 – 16.
[62] Record, p. 32, l. 15 – 17.
[63] Record, p. 33, l. 7 – 12.
[64] Record, p. 37, l. 21 – 26.
[65] Record, p. 36, l. 1 -10.
[66] Trial Exhibit P-4, p. 14 - 17.
[67] Trial Exhibit P-4, p. 14.

7

529

However, this all changed when with the March 10, 2016 work place accident. Following the attack, Mr. Thibodeaux began experiencing severe episodes of uncontrollable heart racing, shortness of breath, chest tightness, lightheadedness, and dizziness.[68] Mr. Thibodeaux reported to Dr. Abel on March 15, 2016, five days after the accident. Medical records from Dr. Abel noted that Mr. Thibodeaux was a school teacher who was recently involved in a parent/child dispute with a student punching him in the right anterior precordium about a week prior.[69] Since the incident, Mr. Thibodeaux had noted chest discomfort and tightness.[70] Dr. Abel further noted that he had several spells of tachycardia (heart racing while at rest) related to his anxiety over the workplace event.[71] Dr. Abel increased the dosage of several of Mr. Thibodeaux's medications and took him out of work for two weeks. He further indicated that he may need to stay out of work for a longer period of time and that he should consult a psychologist.[72]

Mr. Thibodeaux testified that he did not understand at the time that he was having psychological issues. Based on his lay understanding, he confused the symptoms he was having with cardiac issues.[73]

Although Mr. Thibodeaux was not aware yet that his symptoms were psychological in nature, he continued to suffer from the outward symptoms. The next day after seeing Dr. Abel, a blood vessel popped in the corner of his left eye causing a "hematoma like a mouse under my eye."[74] This only caused Mr. Thibodeaux's stress and anxiety to increase as he felt this may be a precursor for a stroke.[75] Mr. Thibodeaux immediately returned to Dr. Abel who continued to recommend that

---

[68] Record, p. 33, l. 19 -25.
[69] Trial Exhibit P-4, p. 18 – 21.
[70] Id.
[71] Id.
[72] Id.
[73] Record, p. 34, l. 12-25.
[74] Record, p. 39., l. 1-12.
[75] Record, p. 39., l. 1-12.

8

he see a psychologist.

At his next follow-up visit on March 23, 2016, Dr. Abel noted that Mr. Thibodeaux was experiencing "an unusual amount of occupational stress that produces anxiety and cardiac symptoms."[76] He again recommended a consultation with a psychologist/psychiatrist of Mr. Thibodeaux's choosing.[77] Dr. Abel recommended that he not return to work for three (3) months or after clearance by Dr. Abel and a psychologist.[78]

In a follow up visit on April 18, 2016, Dr. Abel noted that the claimant was being seen for chest tightness and occupational stress.[79] Dr. Abel recommended that he consult with a psychiatrist/psychologist and remain off of work until released. He noted that Mr. Thibodeaux was still having episodes of profuse sweating and anxiety.[80] Dr. Abel further diagnosed him with anxiety which he noted was due to a difficult work situation. His records indicate that this was "very stressful and produces untoward symptoms."[81] Mr. Thibodeaux testified that Dr. Abel told him that his condition was work related.[82] Both Dr. Abel's affidavit and deposition testimony were entered into the record. These confirmed that Dr. Abel related Mr. Thibodeaux's disabling injuries to the work place accident.[83] In fact, in his deposition, Dr. Abel specifically recalled watching Mr. Thibodeaux perspiring in front of him while trying to recount the event.[84] Dr. Abel, who had known Mr. Thibodeaux for many years, felt that this event sent him "over the cliff."[85]

---

[76] Trial Exhibit P-4, p. 25-28.
[77] Id.
[78] Id.
[79] Trial Exhibit P-4, p. 29-31.
[80] Id.
[81] Id.
[82] Record, p. 41, l. 4 – 6.
[83] Trial Exhibit P-5, p. 1; Trial Exhibit P-6, p. 84, l. 20 - 25.
[84] Trial Exhibit P-6, p. 47, l. 8 – 14.
[85] Id.

9

Following his initial treatment with Dr. Abel, Mr. Thibodeaux sought workers' compensation benefits with the School Board. Initially, his check was not reduced because his sick leave was being docked.[86] However, once his check began to be reduced, Mr. Thibodeaux discussed his claim with several individuals at the School Board, including the School Superintendent, Mr. Lenny Armond.[87] Despite initial assurances that his pay and benefits would be reinstated due to the teacher assault pay statute, Mr. Thibodeaux's pay was never reinstated.[88]

A *Workers Compensation – First Report of Injury or Illness* was prepared by the School Board on May 20, 2016.[89] It indicates the type of injury as "STRUCK BY PERSON" and the party of body affected as "Chest-I. Specific Injury."[90] Without obtaining any medical opinion to substantiate its position, the School Board immediately denied Mr. Thibodeaux's workers' compensation claim on June 16, 2016.[91] Despite receiving numerous medical records and opinions of doctors that Mr. Thibodeaux needs treatment for his injuries, the School Board has continued to completely deny this claim and has refused Mr. Thibodeaux any medical and/or indemnity benefits.[92]

Although the School Board immediately denied this claim and has refused to provide an initial evaluation for Mr. Thibodeaux in any field, he did begin seeing a psychologist, Dr. Scott Eckholdt, of his own volition.[93] However, Mr. Thibodeaux's ability to get this treatment was severely limited by the fact that he had to pay out of pocket. In fact, Dr. Eckholdt has allowed Mr. Thibodeaux to pay a little bit each month to pay off the past due bill for his services which totaled $1,800.00.[94] Dr. Eckholdt diagnosed Mr. Thibodeaux with Mood Disorder, Anxiety Disorder, Depression, Post-

---

[86] Record, p. 42, l. 5 – 9.
[87] Record, p. 42, l. 13-24.
[88] Records, p. 43, l. 18 -24.
[89] Trial Exhibit P-1, p. 1.
[90] Id.
[91] Trial Exhibit P-11, p. 31.
[92] Record, p. 53, l. 24.
[93] Record, p. 44, l. 22 -32.
[94] Record, p. 44, l. 29-32; p. 45, l. 1-4.

10

Traumatic Stress Disorder (PTSD) and Major Depressive Disorder (MDD) as a result of this accident.[95] Dr. Eckholdt also removed Mr. Thibodeaux from work and provided his expert medical opinions in both his affidavit and deposition testimony that Mr. Thibodeaux's injuries and ensuing disability are as a result of the March 10, 2016 incident.[96] Dr. Eckholdt recommended that Mr. Thibodeaux used medication and undergo Cognitive Behavioral Therapy (CBT) for his symptoms.[97] Despite being provided with Dr. Eckholdt's records, and without any medical evidence of their own to substantiate their position, the School Board continued to refuse Mr. Thibodeaux medical treatment, including any treatment with Dr. Eckholdt. They further continued to refuse to provide him with indemnity benefits.[98]

The employer eventually had second medical opinions done by their choice of physicians in the fields of cardiology and psychology. They moved forward with having second medical opinions in these two fields without authorizing an initial evaluation for Mr. Thibodeaux.

Mr. Thibodeaux participated in a psych SMO with Dr. Charles Frey on August 2, 2017. The employer's SMO physician, Dr. Charles Frey of the Jefferson Neurobehavioral Group diagnosed Mr. Thibodeaux with adjustment disorder, unspecified, and agreed with Dr. Eckholdt that Mr. Thibodeaux would benefit from additional cognitive behavioral treatment (CBT).[99] Dr. Frey noted that a full course of CBT would be completed within 10-12 sessions.[100] Despite this opinion from the employer's SMO physician, the School Board continued to refuse medical treatment to Mr. Thibodeaux.[101]

---

[95] Trial Exhibit P-7, p. 1–7.
[96] Trial Exhibit P-8, p. 1-2; Trial Exhibit P-9, p. 30, l. 13-25
[97] Trial Exhibit P-7, p. 1–7.
[98] Record, p. 53, l. 24.
[99] Trial Exhibit D-6, p. 16.
[100] Id.
[101] Record, p. 51, l. 8 -10.

11

Mr. Thibodeaux then saw the employer's choice of cardiologist, Dr. Carl Lavie, on September 20, 2017, more than a year and a half after they already denied the claim.[102] While Dr. Lavie indicated Mr. Thibodeaux could return to work from a cardiac standpoint, he acknowledged the psychological component of this case. His report stated, "In my opinion, unless there is an issue with psychological stress from a psychiatric standpoint, from a cardiac standpoint he could be teaching and Mr. Thibodeaux says he would like to return to teaching. He certainly could do other work for the school board."[103]

Following his visit with the SMO doctors, Mr. Thibodeaux actually tried to see if it might be possible for him to try some other forms of work. Through his counsel, Mr. Thibodeaux offered the School Board to attempt to return to some other type of work with the School Board that was not student critical.[104] However, the School Board declined to let him attempt any other work. Mr. Thibodeaux was able to pick up some very part time work working for Coastal Safety.[105] Mr. Thibodeaux worked for Coastal Safety on approximately five occasions over the course of several months.[106] However, his continued psych issues caused difficulty even with his very limited occasional employment with Coastal Safety.[107]

The employer moved for Independent Medical Examinations in the fields of cardiology and psychology. The Court appointed Dr. Pramilla Subramaniam in the field of cardiology. Dr. Subramaniam concluded that from a cardiac standpoint, he did not believe Mr. Thibodeaux was

---

[102] Trial Exhibit D-5, p. 1.
[103] Trial Exhibit D-5, p. 2.
[104] Record, p. 48, l. 1-2.
[105] Record, p. 48, l. 13 – 16.
[106] Record, p. 49., l. 132 – 20.
[107] Record, p. 50, l. 3 – 18.

disabled.[108] However, he noted that he had a lot of anxiety and stress related issues and would benefit from psychiatric care.[109]

The Court further appointed Dr. Ernest C. Ellender, PhD. to perform the psychological IME. Dr. Ellender, did an extremely thorough evaluation of Mr. Thibodeaux over the course of several days. Dr. Ellender agreed with the claimant's treating physician, Dr. Eckholdt, and the employer's SMO doctor, Dr. Frey that Mr. Thibodeaux should undergo CBT sessions. [110] Dr. Ellender further laid out a detailed treatment plan that Mr. Thibodeaux should undergo including consultation for psychopharmacologic treatment to accompany his CBT therapy.[111] Additionally, the Court appointed IME physician, Dr. Ellender, agreed with Dr. Eckholdt that Mr. Thibodeaux was not capable of returning to work at his prior position as an elementary teacher at this time due to his psychological issues from the accident.[112]

Mr. Thibodeaux testified that he would like to get the CBT recommended by Dr. Eckholdt, Dr. Frey, and Dr. Ellender.[113] Additionally, if he could get this treatment and get better, Mr. Thibodeaux testified he would love to try to return to teaching.[114]

II.    LAW AND ARGUMENT

A.  MR. THIBODEAUX WAS INVOLVED IN AN ACCIDENT WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT WITH THE SCHOOL BOARD

An employee is entitled to workers' compensation benefits if the employee receives personal injury by accident arising out of and in the course and scope of his employment. La. R.S. 23:1031. An accident is defined as:

"Accident" means and unexpected or unforeseen actual,

---

[108] Trial Exhibit D-7, p. 3.
[109] Id.
[110] Trial Exhibit P-10, p. 10-11.
[111] Id.
[112] Id.
[113] Record, p. 54, l. 28 – 32.
[114] Records, p. 55, l. 1 – 14.

13

identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.

La. R.S. 23:1021.

There is no question that the events which Mr. Thibodeaux testified to constitute an "accident" under LA R.S. 23:1031. The punching in the chest by the student clearly constituted an unexpected or unforeseen actual, identifiable, precipitous event which happened both suddenly and violently and directly produced objective findings of an injury which was more than a simple gradual deterioration or progressive degeneration. As mentioned earlier, Mr. Thibodeaux's trial testimony regarding the occurrence of the accident was uncontested and is accepted as true by this Court. See *West v. Bayou Vista Manor, Inc.,* 371 So.2d 1146, 1147 (La. 1979) (In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of the testimony.) The punch to the chest by the student is a triggering physical injury.

## B.  MR. THIBODEAUX SUFFERED A DISABLING WORK-RELATED INJURY

1.  General Law on Disabling Mental Injury whether mental/mental or mental/physical.

Entitlement to weekly workers' compensation benefits hinges upon a worker's proof of a disabling work-related injury, whether temporary or permanent. *Garnier v. Orleans Parish School Board,* 01-0860, p. 20 (La. App. 4 Cir. 7/31/02), 824 So.2d 1222, 1234, citing *Parker v. National Linen Service,* 95-0500 (La. App. 4 Cir. 3/14/96), 671 So.2d 963. A worker seeking temporary total disability must prove by clear and convincing evidence that he or she is unable to engage in any gainful occupation, whether or not the same type of work he or she was engaged in at the time of injury. La. R.S. 23:1221(1)(c).

14

After the initial increase in cardiac symptoms, which in and of itself can constitute a physical injury, including but not limited to a tightness in the chest, heart pounding, a large increase in blood pressure, tachycardia, shortness of breath, lightheadedness and dizziness, it is clear the remaining etiology of his symptoms and ensuing disability was due to mental injuries. La. R.S. 23:1021(8) provides in pertinent part:

> (a) "Injury" and "personal injuries" include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.

> (b) **Mental injury caused by mental stress.** Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.

> (c) **Mental injury caused by physical injury.** A mental injury or illness caused by a physical injury to the employee's body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.

> (d) No mental injury or illness shall be compensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association. [Emphasis in original.]

When the mental injury is caused by mental stress, the plaintiff has the burden of "proving, by clear and convincing evidence, that his mental disorder is the result of `a sudden, unexpected, and extraordinary stress related to the employment. ...'" *Cressionnie v. Fisk Elec.*, 93-931, p. 4 (La.App. 5 Cir. 2/14/96), 671 So.2d 3, 5, citing *Jeansonne v. Wick Publishing Co.*, 94-462, p. 5 (La.App. 5 Cir. 11/29/94), 646 So.2d 1212, 1214. A mere showing that a mental injury is related to the general conditions of employment, or to incidents occurring over an extended period of time,

15

is not enough to entitle the claimant to compensation. *Id.* The mental injury must be precipitated by an accident, i.e., an unexpected and unforeseen event that occurs suddenly or violently. *Sparks v. Tulane Medical Center Hospital and Clinic,* 546 So.2d 138, 147 (La.1989). Furthermore,

> "A mental injury is compensable in a workers' compensation case, depending upon the type of stress which triggers that injury; the legislature intended that the nature of the stress itself be evaluated, rather than the stress being evaluated from the employee's perspective."

> "To be compensable, mental injury resulting from work-related stress must have been caused by an unexpected and unforeseen event that occurs suddenly or violently."

> "The extraordinary nature of the stress for which workers' compensation is sought is determined from the point of view of the ordinary reasonable person of usual sensibilities, not from the point of view of the claimant." *Fleming v. Garda Security,* 65 So.3d 763, 10-1021 (La. App. 5 Cir. 5/10/11.)

While unfortunately, high school teenagers and parents sassing or yelling obscenities at teachers tends to be more commonplace nowadays, what transpired in this case may not rise to the level to create a mental/mental injury when comparing these types of words to the person of usual sensibilities; the actual physical accosting is surely an unexpected and unforeseen event occurring suddenly and violently which would offend the ordinary reasonable person of usual sensibilities. Upon using the violent attack as the catalyst for the mental/physical claim regardless if the punch to the chest left a mark or not, and considering the mental reaction and mental stress symptoms of Mr. Thibodeaux, he would qualify under the mental/physical theory more so than the mental/mental theory. In the alternative, if the physical/mental injury would not be held sustainable by the Appellate Court, this Court would argue that the physical confrontation was enough of a stressor and created an injury such that the mental/mental theory would and should

16

538

be considered as a viable legal conclusion.

Under the mental injury caused by mental injury statute (23:1021(b)), there is no doubt that Mr. Thibodeaux would meet the additional requirement that the stress be as a result of a "sudden, unexpected, and extraordinary stress related to the employment." In order to meet this criteria, the claimant demonstrated that the "the mental injury was not just related to the general conditions of employment, or to incidents occurring over an extended period of time." *Cressionnie v. Fisk Elec.*, 93-931, p. 4 (La.App. 5 Cir. 2/14/96), 671 So.2d 3, 5, citing *Jeansonne v. Wick Publishing Co.*, 94-462, p. 5 (La.App. 5 Cir. 11/29/94), 646 So.2d 1212, 1214. Here, Mr. Thibodeaux can easily satisfy these criteria.

A plaintiff-employee's disability will be presumed to have resulted from an employment accident if before the accident the plaintiff-employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition. This presumption is not a conclusive one; rather, it compels the defendant to come forward with sufficient contrary evidence to rebut it. *Doucet v. Baker Hughes Production Tools*, 93-3087 (La. 3/11/94), 635 So.2d 166, 167-68, citing *Hammond v. Fidelity & Casualty Co. of New York*, 419 So.2d 829, 831 (La. 1982).

The cause of disability is to be determined by the totality of the evidence, both medical and lay. Further, in evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness.

> 2. **This Case Is Determined Under the Mental Injury Caused by Physical Injury Statute, but the Result is the Same Under Either Statute**

At the outset, Claimant asserts this case should be decided under the mental injury caused by physical injury statute (23:1021(c)) since Mr. Thibodeaux did sustain a physical injury at the

17

time of the accident. His testimony was clear that he was struck with full force directly in the chest. There is no requirement in the statute that quantifies how significant the injury must be, only that one was suffered. In *Traweek v. City of West Monroe*, 30,571, p. 8 (La.App. 2 Cir. 5/13/98), 713 So.2d 655, 661, a police officer claimed mental injuries stemming from several events, including a planned exercise where the officers were pepper sprayed. The claimant attempted to use this event to argue that his injuries should be evaluated under the mental injury caused by physical injury statute. The Court agreed, stating:

> "It matters not that the physical injury is short-lived with virtually no risk of lasting physical effects. The critical inquiry is whether conclusive psychiatric testimony can link this physical trauma as the cause of the mental illness of the employee." *Traweek*, at 661.

See also *Payne v. Orleans Parish School Board*, 2005-0682 (La. App. 4th Cir. 3/2/06), 929 So.2d 121 (middle school teacher's case decided under mental injury caused by physical injury although only physical injury reported was small cut on leg).

Unlike a mental injury caused by mental stress, a mental injury resulting from a work-related physical injury need not be the result of a sudden, unexpected, and extraordinary stress related to the employment. *LaDay v. Catalyst Technology*, 00-1973, p. 7 (La.App. 1 Cir.11/9/01), 818 So.2d 64, 68. However, it must be demonstrated by clear and convincing evidence. Nevertheless, a physical injury established by objective findings at the time of the event must be shown and the claimed mental illness must be linked to that objective, physical event. *Traweek v. City of West Monroe*, 30,571, p. 8 (La.App. 2 Cir. 5/13/98), 713 So.2d 655, 661.

Mr. Thibodeaux was specifically asked whether he had any expectation that a student was going to be running down the hall and strike him in the chest. He responded that he did not expect

18

540

to be attacked.[115] Mr. Thibodeax further testified that it was a shock to him.[116] It should be noted the School Board offered no contradictory testimony on this subject. Certainly, the School Board could have called either the principal or a school board official to contradict this statement.

Regardless of the above, Louisiana Jurisprudence has specifically held that an assault on a teacher by a student was an unexpected, unforeseen, and extraordinary event thus entitling the employee to benefits under 23:1021(b). See *Payne v. Orleans Parish School Board*, 2005-0682 (La. App. 4th Cir. 3/2/06), 929 So.2d 121 (awarding benefits to teacher for mental injuries suffered when a student threw a desk at her); See also *Robinson v. Calcasieu Parish School Board*, 2011-615 (La. App. 3rd Cir. 11/3/11), 77 So.3d 109, writ denied, 80 So.3d 478 (La. 2012) (awarding benefits to teacher for mental injury suffered after being struck on head by student).

In Mr. Thibodeaux's case, there are two physical injuries which stand as a catalyst to connecting the physical/mental injury theory. First, the physical, full force, chest compression or thrust attack by the student catapulting himself over other students to make physical contact with Mr. Thibodeaux, thereafter causing a mental stress reaction. Secondly, the temporary elevation of Mr. Thibodeaux's heart rate and blood pressure. Whether it was for a few minutes, a few hours or a few days, it was well established through the evidence that Mr. Thibodeaux felt tightness in his chest, his blood pressure became dangerously high, there was uncontrolled heart racing, shortness of breath, lightheadedness, several spells of tachycardia, sweating, and dizziness immediately after the attack and through several days thereafter. This Court sees these episodes as a temporary aggravation or exacerbation of his pre-existing heart condition which in turn correlates to a physical catalyst for the mental stress injury to attach.

---

[115] Record, p. 24., l. 19 – 23.
[116] Record, p. 71., l. 15 – 18.

19

### 3. Mr. Thibodeaux Has Met His Burden of Proving a Disabling Mental Injury

At the outset, the evidence established at trial through Mr. Thibodeaux's testimony and also the prior records of Dr. Able indicate that at the time of the incident, Mr. Thibodeaux was not suffering from any of the symptoms in the months leading up to the accident. Without rehashing all of the evidence discussed in the proceeding section, Dr. Able's records make it clear that Mr. Thibodeaux was completely asymptomatic at his followup visit eight months prior to the workplace accident. Accordingly, since Mr. Thibodeax was in good health prior to the workplace accident and the symptoms of the disabling condition appeared and continuously manifested themselves right after the accident, Mr. Thibodeaux's disability will be presumed to have resulted from the workplace accident. *Doucet v. Baker Hughes Production Tools*, 93-3087 (La.3/11/94), 635 So.2d 166, 167-68, citing *Hammond v. Fidelity & Casualty Co. of New York*, 419 So.2d 829, 831 (La.1982). This shifts the burden to the schoolboard to come forward with sufficient contrary evidence to rebut the presumption. *Id.*

The evidence presented at trial indicates that Mr. Thibodeaux underwent a significant blow to his chest. He immediately began having severe symptoms including tightness in his chest, trouble breathing, Tachycardia (heart racing), tunnel vision, dizziness, and was sweating profusely. These symptoms were so severe that his principal commented that she did not want him to die in her school and she sent him home immediately. Although Mr. Thibodeaux tried to return the next day, he could barely make an hour of school as the symptoms were so severe.

Mr. Thibodeaux initially reported to his cardiologist who immediately noticed the increased cardiac symptoms and the psychological component and recommended that he see a psychologist. Over the course of several visits, his treating cardiologist Dr. Able disabled him from work. Both Dr. Able's affidavit and his deposition testimony clearly established that these symptoms were caused by stress and anxiety from this accident. Additionally, even though it was

20

later determined that Mr. Thibodeaux may not be currently disabled from a cardiac standpoint, both the employer's SMO doctor, Dr. Lavie, and the court's IME doctor, Dr. Subramaniam recognized the psychological issues that Mr. Thibodeaux was having and felt that he should get further psychiatric care.

Although it took some time for Mr. Thibodeaux to eventually realize that his issues consisted of a psychological component, he eventually did treat with Dr. Eckholdt despite the fact that the employer refused him this care. As discussed above, Dr. Eckholdt diagnosed Mr. Thibodeaux with Mood Disorder, Anxiety Disorder, Depression, Post Traumatic Stress Disorder, and Major Depressive Disorder as a result of this accident. It should also be noted that Dr. Eckholdt indicated that his diagnosis met the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.[117]

Dr. Eckholdt removed Mr. Thibodeaux from work and provided his expert medical opinions in both his affidavit and deposition testimony that Mr. Thibodeaux's injuries and ensuing disability were a result of the March 10, 2016 accident. Dr. Eckholdt recommended CBT for Mr. Thibodeaux. Furthermore, Dr. Eckholdt was clear that Mr. Thibodeaux was not currently capable of returning to work in his former position as a teacher and that his treatment and disability was related to the March 10, 2016 work accident. Thus, Dr. Eckholdt's testimony establishes all of the medical criteria necessary under the definition of a mental injury under 23:1021(b) – (d).

Although the employer's SMO, Dr. Charles Frey, did not disable Mr. Thibodeaux from work, he did agree that Mr. Thibodeaux would benefit from cognitive behavioral treatment.

---

[117] Trial Exhibit P-8, p. 1 – 2.

21

Furthermore, he diagnosed Mr. Thibodeaux with Adjustment Disorder, unspecified. It should be noted, that as a general rule, the testimony of the treating physician should be accorded greater weight than a SMO physician who examines a patient only once. *Idusuyi v. Earl K. Long Medical Center*, 2012-0751 (La. App. 1 Cir. 12/21/12), 111 So. 3d 1062.

Regardless, the most important piece of evidence in this case was the Court appointed Independent Medical Examiner, Dr. Earnest Ellender. A review of Dr. Ellender's report and addendum clearly indicates that Dr. Ellender did an extremely thorough evaluation of the claimant, meeting with him over the course of several days. Dr. Ellender agreed with both Dr. Eckholdt and Dr. Frey that Mr. Thibodeaux should undergo CBT sessions. He also laid out a detailed treatment plan for Mr. Thibodeaux including consultation for psycho-pharmacological treatment to accompany his CBT therapy. Most importantly, Dr. Ellender agreed with Dr. Eckholdt that Mr. Thibodeaux is not capable of returning to his work at his prior position as a teacher due to his psychological issues from the accident. The report of the IME doctor shall be prima facie evidence of the facts therein stated. See LA R.S. 23:1123. Moreover, an IME's medical conclusion should be given significant weight because the IME is an objective party. *Scott v. Wal-Mart Stores, Inc.*, No. 2003-0858 (La. App. 1 Cir. 2/23/04), 873 So.2d 664. An addendum to the IME report was requested by the Court. In this addendum, Dr. Ellender went through and actually demonstrated to the Court how his diagnosis met the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association. Accordingly, Dr. Ellender's report and addendum establish all of the medical criteria necessary under the definition of a mental injury under 23:1021(b) – (d).[118]

Thus, the evidence overwhelmingly indicates that Mr. Thibodeaux's psychological issues

---

[118] Trial Exhibit P-13, p. 3 – 8.

22

544

and ensuing disability were related to the accident. Additionally, the evidence further indicates that Mr. Thibodeaux is not able to return to his job as a teacher with the schoolboard as this time. The combination of the testimony and evidence from Mr. Thibodeaux, the treating physician, Dr. Eckholdt, and the IME physician, Dr. Ellender, is more than sufficient to meet the claimant's burden.

The School Board argues Mr. Thibodeaux's complaints are more related to Mr. Thibodeaux's treatment by the School Board following the attack than the actual attack itself. However, this argument fails on several accounts. First, Mr. Thibodeaux's symptoms clearly manifested themselves immediately after the attack. In fact, his testimony was clear that his symptoms were the most severe right after the attack. They were so severe that the principal commented that she did not want Mr. Thibodeaux to die in her school and sent him home. Additionally, despite his best efforts, he was not able to make it through more than an hour of school the next day. If the School Board's argument that Mr. Thibodeaux's psychiatric issues were actually caused by the way he was treated by the School Board were true, then we would most likely see the symptoms first manifesting themselves after his meeting with the principal, rather than right after the incident. Additionally, we cannot simply look at the after effects of the incident in a vacuum. All of the after effects are related to the original incident. It is often with mental injury cases that the claimant's depression is from more than just the physical injuries sustained, and the claimant's anxiety and depression can stem from the after effects of the accident, such as from feelings that the employer has abandoned them or due to the fact that they are no longer able to work and earn a living for their families. Thus, it is extremely common for the mental injuries to be caused, in part, by the after effects of an accident. Clearly, in the present matter, it was the traumatic event of Mr. Thibodeaux being attacked which first caused his symptoms and "pushed him over the cliff" as Dr. Abel testified.

23

## C. MR. THIBODEAUX IS ENTITLED TO REASONABLE AND NECESSARY MEDICAL TREATMENT.

An employer is obligated to furnish all necessary medical expenses related to a work injury. La. R.S. 23:1203. A claimant may recover medical expenses that are reasonably necessary for the treatment of a medical condition caused by a work-related accident. *City of Shreveport v. Casciola*, 43,132 (La.App.2d Cir.3/26/08), 980 So.2d 203. The claimant must prove by a reasonable preponderance of the evidence the necessity and relationship of the physician's treatment to the work injury. *Casciola, supra.*

In the case at bar, Mr. Thibodeaux has met his burden of proving his entitlement to reasonable and necessary medical treatment. All six of the doctors who examined Mr. Thibodeaux indicated that he should receive further psychiatric care. Additionally, Mr. Thibodeaux is entitled to reimbursement of the medical bills of Dr. Eckholdt in the amount of $1,800.00. This Court finds all treatment rendered to Mr. Thibodeaux to date was reasonable and medically necessary.

## D. MR. THIBODEAUX IS ENTITLED TO INDEMNITY BENEFITS FROM MARCH 10, 2016, TO PRESENT.

Mr. Thibodeaux is entitled to indemnity benefits at the maximum compensation rate of $649.00 per week[119] from the date of the accident to present, and on an ongoing basis. Louisiana Revised Statute 23:1221(a) pertains to temporary total disability ("TTD") under the Workers' Compensation Act. TTD benefits are paid to an employee-claimant injured while engaged in employment, and when that employee can no longer engage in any "self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured." La. R.S. 23:1221(1)(a). The burden of proof to show a disability

---

[119] The parties stipulated at the beginning of trial that Mr. Thibodeaux's compensation rate was $649.00 per week. See Record, p. 4, l. 28 – 32; p. 5, l. 1 – 7.

24

546

is on the claimant, who must show by "clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment." La. R.S. 23:1221(1)(c). "Clear and convincing evidence requires the employee 'demonstrate that the existence of a disputed fact is highly probable [or] much more probable than its nonexistence." *Alexander v. Autozone, Inc.*, 04-871, p. 6 (La. App 3 Cir. 12/8/04), 889 So.2d 366, 371. In order to satisfy this burden, a claimant may use medical and lay testimony. *Kepco Operating, Inc. v. Eubanks*, 10-1166 (La. App. 3 Cir. 3/9/11), 58 So.3d 1047, *writ denied*, 11-0705 (La.6/3/11), 63 So.3d 1017. Medical evidence used to meet the burden of proof must be objective and testify to the "medical condition, symptoms, pain, and treatment." *Alexander*, 889 So.2d at 371. "An injured worker is entitled to receive temporary total disability benefits from the date of his disabling injury until either party shows a lawful ground for a change in his status." *Hodges v. Quail Tools, Inc.*, 97-1340, p. 5 (La. App. 3 Cir. 3/6/98), 709 So.2d 975, 978; *Thomas v. Lafayette Parish Sch. Sys.*, 2014-732 (La. App. 3 Cir. 12/10/14), 158 So. 3d 67, 70-71.

Mr. Thibodeaux testified that he was able to work for a few months for Coastal Safety. It was unclear how long he worked or for which months he worked; however, this Court took into account his temporary SEB status and the income he made from this employment. This Court in its final judgment granted the employer a credit for the wages earned by the claimant through his employment with Coastal Safety.

As discussed more fully above, Mr. Thibodeaux has provided both lay and expert medical testimony demonstrating that he was unable to work (except for that limited period of time discussed above) due to injuries suffered from the workplace accident. Moreover, Mr. Thibodeaux demonstrated that the disabling symptoms manifested themselves immediately after the accident. In fact, his principal sent him home right after the accident. Furthermore, he attempted to return to

25

work the next day but was not able to make it through more than an hour. Mr. Thibodeaux's treating cardiologist, Dr. Abel, took him off of work on March 15, 2016. Dr. Abel clearly indicated that Mr. Thibodeaux should not return to work until he was cleared by a psychologist. Even though he is a cardiologist, he clearly has the medical expertise to disable Mr. Thibodeaux from work until he was cleared by a psychologist.

The School Board argues if any indemnity benefits are awarded, they should be awarded from the date Mr. Thibodeaux was taken out of work by Dr. Eckholdt. However, this would be in error as Dr. Abel is clearly qualified to diagnose the claimant's anxiety and stress issues and disable him until he was cleared by a psychologist. Perhaps more importantly, the School Board denied Mr. Thibodeaux an initial evaluation with a psychologist and denied all medical treatment. It would be unfair to allow the School Board to deny the claimant his statutory right to an initial evaluation and then allow them to use this denial to avoid paying indemnity benefits until he finally was able to see Dr. Eckholdt on his own.

### E. MR. THIBODEAUX IS ENTILTED TO AN AWARD OF PENALTIES AND ATTORNEY FEES

La. R.S. 23:1201(B) provides that the first installment of compensation benefits for temporary total disability, permanent total disability, or death shall become due the fourteenth day after the employer has knowledge of the injury giving rise to disability. La. R.S. 23:1201(F) further provides that if an installment of benefits is not timely paid within the 14-day period, "there shall be added to such unpaid installment a penalty of ... twelve percent thereof ... unless such nonpayment results from conditions over which the employer or insurer had no control," or unless "the employee's right to such benefits has been reasonably controverted by the employer. Both penalties and attorney's fees are recoverable under La. R.S. 23:1201(F) if the employer or insurer fails to commence payments of compensation benefits timely or to pay continued

26

installments timely (or to pay medical benefits timely) unless the claim is reasonably controverted. *Williams v. Rush Masonry, Inc.,* 98-2271, pp. 4-5 (La.6/29/99), 737 So.2d 41, 44.

A claimant's right to benefits will be deemed "reasonably controverted" if the factual and medical information of the employer reasonably counters that of the claimant. *Woods v. Ryan Chevrolet, Inc.,* 30,206, p. 9 (La.App. 2 Cir. 2/25/98), 709 So.2d 251, 257. Employers, however, must demonstrate that reasonable efforts were made to medically ascertain the worker's exact condition before denying benefits. *Lemoine v. Hessmer Nursing Home,* 94-836, p. 20 (La.App. 3 Cir. 3/1/95), 651 So.2d 444, 456 (emphasis added). Where a defendant fails to assemble and assess factual and medical information about a claimant's physical condition before denying a claim, he runs the risk of subjecting himself to statutory penalties. *Connor v. Jones Bros. Enterprises,* 606 So.2d 996, 1004 (La.App. 4 Cir.1992); *Payne v. Orleans Parish School Board,* 2005-0682 (La. App. 4th Cir. 3/2/06), 929 So.2d 121 (emphasis added).

As noted above, the School Board refused to authorize an initial evaluation in the field of psychology. Moreover, after receiving medical records from both Dr. Abel and Dr. Eckholdt indicating Mr. Thibodeaux was disabled from this accident and recommending further treatment, they refused to authorize any medical treatment or to provide indemnity benefits. At the time, they had no medical evidence of their own to substantiate their denials. As there was no reasonable basis for the employer's failure to provide reasonable and necessary medical treatment and indemnity benefits to the claimant at that time, the claimant is clearly entitled to an award of penalties, attorney's fees, cost, and interest. Clearly, Mr. Thibodeaux had a traumatic incident. No one is denying the occurrence of the assault. With that being said, the employer should have offered an initial evaluation at that time. At first, Mr. Thibodeaux did not request an initial evaluation and sought treatment with his cardiologist who was treating him for a pre-existing

27

heart condition. Once it was determined there was a psychiatric component to his condition, especially in light of the attack, the employer should have authorized at the least an initial evaluation with a psychologist of Mr. Thibodeaux's choosing. With regard to the amount of attorney fees to be awarded in this case, this Court determined a fair fee would be $10,000.00. Regarding the amount of penalties to be awarded in this case, this Court determined a penalty of $2000.00 is assessed for the employer's failure to authorize a choice of physician in the field of psychology/psychiatry. This Court found there was no just cause in refusing a psychiatric evaluation

### III. CONCLUSION

For the foregoing reasons, this Court rendered judgment in favor of the claimant/employee, Michael Thibodeaux and against the defendant/employer, St. Mary Parish School Board.

_____

ELIZABETH C. LANIER, JUDGE, DISTRICT 9

28

MICHAEL THIBODEAUX

VERSUS

ST. MARY PARISH SCHOOL
BOARD

NUMBER: 2019 CA 0793

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

WELCH, J., dissenting.

*JEW* I respectfully disagree with the majority opinion in this matter and would remand this matter for the entry of a valid final judgment, or alternatively, dismiss this appeal. The February 28, 2019 judgment of the WCJ is ambiguous as to the specific relief granted because it is not possible to determine, from the language of the judgment alone, the amount of the credit for wages earned by Mr. Thibodeaux through his employment with Coastal Safety. As the majority correctly notes, a valid judgment must be "precise, definite, and certain" and a final appealable judgment must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. **Laird v. St. Tammany Parish Safe Harbor,** 2002-0045 (La. App. 1st Cir. 12/20/02), 836 So.2d 364, 365; **Carter v. Williamson Eye Center,** 2001-2016 (La. App. 1st Cir. 11/27/02), 837 So.2d 43, 44. Further, these determinations should be evident from the language of the judgment without reference to other documents in the record, and the specific nature and amount of damages should be determinable from the judgment so that a third person is able to determine from a judgment the amount owed without reference to other documents. **Laird,** 836 So.2d at 366; **Vanderbrook v. Coachmen Industries, Inc.,** 2001-0809 (La. App. 1st Cir. 5/10/02), 818 So.2d 906, 913-14.

Herein, the February 28, 2019 judgment, sought to be appealed herein, rendered judgment in favor of Mr. Thibodeaux and against the School Board on each element of Mr. Thibodeaux's workers' compensation claim. However, the

judgment also awarded the School Board an employment credit for the wages earned by Mr. Thibodeaux through his employment with Coastal Safety, but did not specify the amount of the credit. Since the exact amount of the employment credit cannot be determined from the judgment, there is no final, appealable judgment before us. In the absence of a valid final judgment this court lacks subject matter jurisdiction and this matter should be remanded for the entry of a valid, final appealable judgment. Otherwise, the appeal should be dismissed.

Thus, I respectfully dissent.